ROBERT ROMANSKI *v.* TOWN OF WEST HARTFORD
(12100)

LANDAU, SCHALLER and CRETELLA, Js.

Argued October 25, 1993—decision released May 10, 1994

---

*Marjorie Wilder,* corporation counsel, for the appellant (defendant).

*Thomas A. Weaver,* for the appellee (plaintiff).

SCHALLER, J. The defendant town of West Hartford appeals from a decision of the compensation review board (review board) of the workers' compensation commission[1] upholding an award of special benefits to the claimant, Robert Romanski, under General Statutes (Rev. to 1989) § 31-308 (d).[2] The principal issue in this case is whether the plaintiff, a retired firefighter diagnosed with treatable hypertension, but no manifest heart disease, is eligible for special benefits provided by § 31-308 (d) in the absence of any evidence of impairment of his earning capacity or disabling effects of his hypertension.

The defendant claims that the compensation review board improperly (1) interpreted General Statutes § 31-308 (d) as not requiring evidence of economic loss,

[1] In 1991, the compensation review division was renamed the compensation review board. Public Acts 1991, No. 91-339, §§ 18, 21 through 24, 32.

[2] General Statutes (Rev. to 1989) § 31-308 provides in pertinent part: "(d) In addition to compensation for total or partial incapacity or for a specific loss of a member or use of the function of a member of the body, the commissioner may award such compensation as he deems just . . . for any permanent significant disfigurement of, or permanent significant scar on, any part of the body . . . . In addition to compensation for total or partial incapacity for a specific loss of a member or loss of use of the function of a member of the body or for disfigurement or scarring, the commissioner may award such compensation as he deems just for the loss or loss of use of the function of any organ or part of the body not otherwise provided for herein, taking into account the age and sex of the claimant, the disabling effect of the loss of or loss of function of the organ involved and the necessity of the organ or complete functioning of the organ with respect to the entire body, but in no case more than the sum equivalent to compensation for seven hundred and eighty weeks."

We note that § 31-308 has undergone extensive restructuring in recent years. General Statutes (Rev. to 1989) § 31-308 was the statute in effect at the time that the plaintiff made his claim for permanent partial loss of bodily function.

(2) required the defendant to assume the burden of proving that the plaintiff was not entitled to benefits because of its improper interpretation of § 31-308 (d), and (3) substituted its own judgment for the commissioner's findings. We affirm the decision of the review board.

The following facts are relevant to this appeal. The plaintiff and the defendant entered a voluntary agreement, pursuant to General Statutes § 7-433c,[3] which was approved by a commissioner of the workers' compensation commission on March 2, 1989, stating that the plaintiff had a condition of "[h]ypertension for the period of 07/01/88 to 07/11/88." Subsequently, the plaintiff filed for benefits pursuant to § 31-308 (d) in which he alleged that, as a result of his hypertension, he sustained permanent loss of function of an organ of the body, specifically his heart and cardiovascular system.

On July 26 and October 16, 1990, formal hearings were held before a workers' compensation commissioner acting for the first district. Edward A. Longo, a cardiologist, testified on behalf of the plaintiff that he initially examined the plaintiff in January, 1989, and determined that the plaintiff had sustained, as a result of his hypertension, a 35 percent impairment of the cardiovascular system. In May, 1990, Longo reevaluated the plaintiff and revised his assessment of impairment of the cardiovascular system to 15 percent.

[3] General Statutes § 7-433c provides in pertinent part: "[I]n the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 . . . ."

Robert Livingston, an internist who was the plaintiff's treating physician, testified for the defendant that although the plaintiff had some narrowing of the retinal arterioles in July, 1988, there was no impairment to an organ or body part. Livingston further asserted that he was not in a position nor was it his purpose to provide an impairment rating.

H. Robert Silverstein, a cardiologist, then testified on behalf of the defendant that he reviewed the plaintiff's medical records and determined that the plaintiff had suffered a 5 percent permanent impairment to the whole person, but had no disability that would prevent him from working. Finally, Stanley Roth, an internist, testified that he examined the plaintiff on September 21, 1989, and determined that the plaintiff had a 5 percent impairment to the whole person.

The commissioner precluded the defendant from questioning the medical witnesses regarding any economic loss suffered as a result of the plaintiff's hypertension on the basis that the plaintiff was not obligated to prove "economic loss" in order to establish his claim. A nonappearing physician, Henry C. Rogers, whose specialty was not stated on the record, wrote in his medical report that the plaintiff was "totally and permanently disabled from engaging in any substantial gainful employment in the service of the municipality."

The commissioner issued a finding and award in favor of the plaintiff. The commissioner found that the plaintiff had sustained a 5 percent permanent partial disability of the cardiovascular system for which he awarded the plaintiff thirty-nine weeks of benefits. On April 29, 1991, the defendant appealed to the review board claiming that the plaintiff had failed to produce evidence that his earnings or earning capacity had been impaired.

On January 13, 1993, the review board rendered its decision affirming the finding and award. The board determined that §§ 31-308 (d) and 7-433c do not require that the plaintiff prove "economic loss" as a requisite to collecting benefits. Thereafter, the defendant appealed to this court.

## I

### PROOF OF ECONOMIC LOSS

### A

The defendant first claims that the review board improperly concluded that economic loss need not be proven in order to receive special benefits pursuant to § 31-308 (d). This issue specifically concerns whether the portion of the statute stating that the commissioner may award such compensation as he deems just, taking into account the "disabling effect of the loss of or loss of function of the organ involved" rises to a requirement of proof of loss of earning capacity in order to receive benefits.

We note at the outset that "[c]ompensation under § 31-308 (d) for partial impairment of one's heart is a special award of benefits. *Felia* v. *Westport,* 214 Conn. 181, 186, 571 A.2d 89 (1990). 'In contrast to the specific benefits of § 31-308 (b), which relate weekly benefits to the impairment or loss of designated body parts . . .'; id.; 'a special award is one that is not compensation for the loss [of] or loss of use of a body part, but is compensation for the inability to work as a result of the disability. See *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 307, 135 A. 574 (1926) (*Haines, J.,* concurring); J. Asselin, [Connecticut Workers' Compensation Practice Manual (1985)] p. 119 (the author refers to these benefits as "continuing wage benefits").' *Morgan* v. *East Haven,* 208 Conn. 576, 584, 546 A.2d 243 (1988). Thus, although a special award derives from a

more specific form of impairment, benefits under §§ 31-306 and 31-308 (d) compensate for the same loss, that is, the loss of wages as a result of one's inability to work." *Ancona* v. *Norwalk,* 217 Conn. 50, 55, 584 A.2d 454 (1991).

Although *Ancona* states that the purpose of § 31-308 (d) is to compensate for lost wages, it does not resolve the question of whether the statute requires a claimant to prove lost wages. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic aids,' e.g., the legislative history. . . ." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

The language of the statute is neither plain nor unambiguous. Our legislature has not defined the phrase "disabling effect," and its meaning in the context of the sentence stating that the commissioner may award such compensation as he deems just, "taking into account the age and sex of the claimant, the *disabling effect of the loss of or loss of function of the organ involved* and the necessity of the organ or complete functioning of the organ with respect to the entire body" (emphasis added) is not clearly discernible. We conclude, therefore, that a review of the legislative history is appropriate for an understanding of the phrase "disabling effect."

At the outset, we will describe the statute as it stood at the time of the plaintiff's claim. General Statutes (Rev. to 1989) § 31-308 set forth a compensation scheme for partial incapacity. Section 31-308 (b) provided a schedule for certain enumerated losses, describing the

loss and the compensation that would be afforded. For example, § 31-308 (b) (6) provided that "for the complete and permanent loss of hearing in one ear, fifty-two weeks." No proof of loss of earning capacity was required in order to obtain benefits pursuant to § 31-308 (b). *Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 13–16, 587 A.2d 1023 (1991).

In addition, § 31-308 (d) provided for certain unscheduled losses, those not assigned a number of weeks for compensation, such as awards for scarring, disfigurement, and loss of organ or loss of function of organ. From 1939 to 1967, this portion of § 31-308[4] concerned awards for compensation for scarring and disfigurement only. The language of the statute changed at various times, but, in essence, the legislature moved to broaden the types of scars and disfiguring marks that rendered an individual eligible for benefits. See generally *Rivera* v. *I. S. Spencer's Sons, Inc.*, 154 Conn. 162, 165–66, 223 A.2d 808 (1966) (discussing evolution of statute concerning compensation for scars or disfiguring marks). Further, our Supreme Court in *Dombrowski* v. *Fafnir Bearing Co.*, 148 Conn. 87, 90, 167 A.2d 458 (1961), held that "under our statute, an award for disfigurement may be made even though a claimant, as was the case here, is unable to prove that the disfigurement is likely to cause any loss of earnings or earning capacity."

The 1967 amendment to the statute added a provision in the area of unscheduled losses that created the opportunity for compensation benefits for the loss of an organ or loss of function of an organ. That amendment stated that the commissioner may award compensation as he deems just for the loss of or loss of use

---

[4] Although we are referring to the statute as § 31-308, the statute concerning partial impairment has appeared as different sections throughout its existence. We further note that prior to 1975, the statute that we are referring to as § 31-308 was not divided into subsections.

of an organ taking into account "the age and sex of the claimant, the disabling effect of the loss of or loss of function of the organ involved and the necessity of the organ or complete functioning of the organ with respect to the entire body . . . ." The pertinent legislative history addressing this portion of the statute reads as follows: "Lastly this section provides compensation for the first time for loss of organs of the body or loss of function in such organs. At the present time if a worker lost a kidney because of an on the job injury, he receives no compensation for such permanent loss, yet the removal of a kidney reduces his chance for survival by 50%. We recognize that each organ of the body is not equally important to the human body and for this reason we have given the commissioners broad discretion to determine values involved with the maximum of 780 weeks compensation." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 4040, remarks of Representative Paul Pawlak, Sr.

In enacting the "loss of or loss of function of the organ" provision of the 1967 amendment, the legislature incorporated this provision into the existing section concerning unscheduled losses regarding scars and disfigurements. The history of the section regarding scars and disfigurement reflects that in order to recover an unscheduled loss, an employee need not prove loss of earning capacity. There is nothing in the legislative history concerning the loss of organ provision that suggests that the legislature intended to treat this unscheduled loss differently from the unscheduled loss attributable to scarring or disfigurement. In fact, the legislative history concerning the loss of organ provision suggests that the legislature intended to give the commissioner broad discretion in determining the percentage of permanent impairment to the organ. Such permanent impairment itself appears to encompass what the legislature intended to include under the umbrella of the term "disabling effect."

In addition, we note that the interpretation of § 31-308 (d) by the review board "warrants respect as the considered judgment of the governmental agency vested with primary authority for enforcing our workers' compensation statutes. . . ." (Citations omitted; internal quotation marks omitted.) *Levanti* v. *Dow Chemical Co.*, supra, 218 Conn. 15–16. The review board addressed the issue of whether a showing of economic loss is necessary to qualify for benefits under § 31-308 (d) in its decision in this case. The review board flatly rejected the notion that § 31-308 (d) requires proof of loss of earning capacity. The review board stated that despite the defendant's claim that § 31-308 (d) required proof of economic loss, "[w]e see nothing in Secs. 31-308 (d) or 7-433c which requires such a reading. The expressed language of [§ 31-308 (d)] together with its legislative history show that the legislature in [§ 31-308 (d)] intended to duplicate for unlisted parts of the body the same benefits available for the listed parts included in [§ 31-308 (b)]."

On the basis of the pertinent cases, the legislative history of § 31-308 (d), and the review board's interpretation of § 31-308 (d), we conclude that loss of earning capacity need not be proven in order to obtain benefits for an unscheduled loss of or loss of function of an organ pursuant to § 31-308 (d).

B

As a result of our conclusion that proof of loss of earnings is not required in order to obtain benefits pursuant to § 31-308 (d) for loss of or loss of use of an organ, we need not address the defendant's contention that the improper conclusion of the review board regarding proof of earning capacity precluded the defendant from questioning witnesses regarding earning capacity and shifted the burden of proof regarding loss of earning capacity to the defendant.

## II

### THE COMMISSIONER'S FINDINGS AND CONCLUSION

"As a preliminary matter, we note that when a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. *Fair* v. *Peoples Savings Bank,* 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). The commissioner has the power and duty, as the trier of fact, to determine the facts. *Castro* v. *Viera,* 207 Conn. 420, 435, 541 A.2d 1216 (1988). ' "The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Adzima* v. *UAC/Norden Division,* [177 Conn. 107, 118, 411 A.2d 924 (1979)].' Id. 'Our scope of review of the actions of the review [board] is similarly limited.' *DeBarros* v. *Singleton,* 21 Conn. App. 107, 110, 572 A.2d 69 (1990)." *Vanzant* v. *Hall,* 219 Conn. 674, 677, 594 A.2d 967 (1991).

In the present case, the commissioner made several findings in support of his conclusion in awarding the plaintiff benefits pursuant to § 31-308 (d). In his findings, the commissioner referred to Longo's opinion that the plaintiff had suffered a 15 percent impairment of his cardiovascular system. In addition, the commissioner relied on Silverstein's and Roth's opinions that the plaintiff had suffered a 5 percent impairment of the whole person. The findings were supported by evidence in the record. On the basis of the evidence presented, the commissioner concluded that the plaintiff suffered from a 5 percent permanent partial impairment of the cardiovascular system. We conclude that the commissioner had before him sufficient facts from which he could conclude that the plaintiff suffered a 5 percent

permanent partial impairment to his cardiovascular system. The review board reiterated the findings of the commissioner and affirmed the award. We likewise affirm the award.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.