## ANGELO PIETRAROIA *v.* NORTHEAST UTILITIES ET AL.
### (SC 16278)

McDonald, C. J., and Borden, Norcott, Palmer and Sullivan, Js.

Argued May 30—officially released August 8, 2000

*Amy M. Stone,* with whom was *Carolyn P. Kelly,* for the appellant (plaintiff).

*Robert J. Enright,* with whom were *Douglas L. Drayton, Theodore M. Pappas* and *Nancy S. Rosenbaum,* for the appellee (named defendant).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether the workers' compensation commissioner (commissioner) abused his discretion in dismissing with prejudice the claim of the plaintiff, Angelo Pietraroia, a resident of Australia, because he failed to appear for the formal hearing before the commissioner in Connecticut. The plaintiff appeals from the decision of the compensation review board (board)[1] affirming the decision of the commissioner dismissing the plaintiff's claim. The plaintiff contends that: (1) the commissioner had no power to dismiss the claim without adjudicating the case on the merits; and (2) in the alternative, the commissioner abused his discretion in dismissing the claim.[2] We conclude that: (1) the commissioner had the power to dismiss the claim; but (2) he abused his

[1] The plaintiff appealed from the decision of the compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

[2] The plaintiff also claims that the dismissal denied him his constitutional rights to due process of law, to access to the courts, and to travel. In view of our conclusion that the commissioner abused his discretion in dismissing the claim, we need not reach the plaintiff's constitutional claims.

discretion in doing so. Accordingly, we reverse the board's decision.

The plaintiff, on August 8, 1994, through his Connecticut attorney, filed a claim for workers' compensation against his former employer, the defendant Northeast Utilities,[3] alleging that, while employed by the defendant from 1956 through 1972, he suffered "[p]ulmonary impairment caused by exposure to lung irritants . . . ."[4] The notice of claim indicated that the plaintiff lived in Australia. The defendant filed a timely notice of contest of liability. Ultimately, on June 5, 1998, the commissioner granted the defendant's motion to dismiss the claim with prejudice. The plaintiff appealed from that decision to the board, which affirmed the decision. This appeal followed.

Certain facts and the procedural history are undisputed. Following the filing of the plaintiff's claim and the defendant's notice of contest, the matter was scheduled for a formal hearing on January 28, 1997. On January 2, 1997, however, the plaintiff moved for permission to present his testimony electronically. In support thereof, the plaintiff represented that he was sixty-four years old, he had lived in Australia since 1972, and he resided in McLaren Flat, South Australia, which is near the city of Adelaide. He also represented that he was unable to testify in person because of illness, as indicated in a medical report attached to the motion.[5] He

---

[3] Other defendants are various insurers of Northeast Utilities, namely, Hartford Insurance Group, Travelers Insurance Co., Twin City Fire Insurance Co., and Liberty Mutual Insurance Co., and the second injury fund. Only Northeast Utilities filed a brief in this court. We therefore refer to Northeast Utilities as the defendant.

[4] It is undisputed that the plaintiff claims that his prolonged exposure to asbestos while in the defendant's employ caused him to contract asbestosis.

[5] The medical report of Peter Leonello, a physician from Hackney, Australia, was dated November 9, 1996, and provides in relevant part: "[The plaintiff] gave me a copy of the letter that you sent him, dated 16/9/1996 and has requested that I write to you again in relation to his medical condition.

"Since I last reported to you on 26/5/1996 I have continued to see [the plaintiff]. During this last winter here he has had frequent bouts of bronchitis

represented further that he "could . . . present his case by way of deposition," which he acknowledged would, however, "be an inconvenience for both [the plaintiff] and [the defendant] in that counsel for each party would either have to travel to Australia at considerable cost or procure Australian attorneys to conduct a deposition in Australia." The plaintiff submitted that "another alternative would be to present his testimony telephonically before the Commissioner at a continued formal hearing scheduled for a time which would take into account the 14 1/2 hour time difference between Middletown, Connecticut and South Australia." He submitted that a telephone with speaker phone capabilities at the site of the hearing would be used, that the oath would be administered by an appropriate official provided in Practice Book § 13-28, formerly § 245,[6] and

with coughing and wheezing and has had a number of courses of antibiotics and bronchial dilators and inhaled steroids.

"In June 1996 he also had an episode of vertigo that lasted about 1 week and this I thought was due to an episode of benign positional vertigo.

"A chest X-ray was repeated on 30/9/96 and copy of the report is enclosed. It again reveals clear changes in keeping with pulmonary asbestosis with pleural and parenchymal involvement.

"He is now retired because of increasing difficulty or inability to work in his vineyard. His symptoms are generally worse during the winter months.

"Given his respiratory problems particularly his tendency for recurrent bouts of bronchitis and asthma and shortness of breath during the winter months I have advised him against traveling to the United States particularly now that the winter is coming there. He is also at risk of developing further episodes of benign positional vertigo. . . ."

The medical report also enclosed a copy of two X-ray reports, dated May 22 and September 30, 1996. These reports referred to earlier X-ray reports and indicated continuing indications of lung disease "consistent with pulmonary asbestosis."

[6] Practice Book § 13-28, formerly § 245, provides: "—Persons before Whom Deposition Taken; Subpoenas

"(a) Within this state, depositions shall be taken before a judge or clerk of any court, notary public or commissioner of the superior court. In any other state or country, depositions for use in a civil action, probate proceeding or administrative appeal within this state shall be taken before a notary public, of such state or country, a commissioner appointed by the governor of this state, any magistrate having power to administer oaths in such state or country, or a person commissioned by the court before which such action

that he would bear the cost of the telephone time. The commissioner denied this request on January 6, 1997.

or proceeding is pending, or when such court is not in session, by any judge thereof. Any person so commissioned shall have the power by virtue of his or her commission to administer any necessary oaths and to take testimony. Additionally, if a deposition is to be taken out of the United States, it may be taken before any foreign minister, secretary of a legation, consul or vice-consul appointed by the United States or any person by him or her appointed for the purpose and having authority under the laws of the country where the deposition is to be taken; and the official character of any such person may be proved by a certificate from the secretary of state of the United States.

"(b) Each judge or clerk of any court, notary public or commissioner of the superior court, in this state, may issue a subpoena, upon request, for the appearance of any witness before an officer authorized to administer oaths within this state to give testimony at a deposition subject to the provisions of Sections 13-2 through 13-5, if the party seeking to take such person's deposition has complied with the provisions of Sections 13-26 and 13-27.

"(c) A subpoena issued for the taking of a deposition may command the person to whom it is directed to produce and permit inspection and copying of designated books, papers, documents or tangible things which constitute or contain matters within the scope of the examination permitted by Sections 13-2 through 13-5.

"(d) The person to whom a subpoena is directed may, within fifteen days after the service thereof or on or before the time specified in the subpoena for compliance, if that time is less than fifteen days after service, serve upon the issuing authority designated in the subpoena written objection to the inspection or copying of any or all of the designated materials. If objection is made, the party at whose request the subpoena was issued shall not be entitled to inspect and copy the disputed materials except pursuant to an order of the court in which the cause is pending. The party who requested the subpoena may, if objection has been made, move, upon notice to the deponent, for an order at any time before or during the taking of the deposition.

"(e) The court in which the cause is pending, or, if the cause is pending in a foreign court, the court in the judicial district wherein the subpoenaed person resides, may, upon motion made promptly and, in any event, at or before the time for compliance specified in a subpoena authorized by subsection (b) of this section, (1) quash or modify the subpoena if it is unreasonable and oppressive or if it seeks the production of materials not subject to production under the provisions of subsection (c) of this section, or (2) condition denial of the motion upon the advancement by the party who requested the subpoena of the reasonable cost of producing the materials being sought.

"(f) If any person to whom a lawful subpoena is issued under any provision of this section fails without just excuse to comply with any of its terms,

Prior to the scheduled January 28 formal hearing, the defendant scheduled a physical examination of the plaintiff with Thomas Godar, a Connecticut physician, and also scheduled a deposition of the plaintiff in Connecticut. These were scheduled for times close to the January 28 formal hearing date. Neither the physical examination nor the deposition took place because the plaintiff did not travel from Australia to Connecticut for the hearing.

At the hearing on January 28, the defendant contended that "the statute of limitations and the statute of non-claim" barred the plaintiff's claim. The defendant also took the position that the hearing could not proceed because the plaintiff had not come to Connecticut to be deposed, to be examined by Godar, or to testify in the matter. The defendant contended that "[i]f the [plaintiff] wants the advantage of the Workers' Compensation Act, he has to come back to the United States and comply with the rules and regulations and laws under Chapter 568" of the statutes. The defendant also suggested, however, that, based on the medical report, which had indicated that the plaintiff's symptoms were worse in the winter months, "[i]f [the plaintiff were] interested in pursuing his claim, maybe it's not ripe to be heard in the winter months in [Connecticut]," and that "[m]aybe his condition will be better in the summer

the court before which the cause is pending, or any judge thereof, or, if the cause is pending in a foreign court, the court in the judicial district wherein the subpoenaed person resides, may issue a capias and cause the person to be brought before that court or judge, as the case may be, and, if the person subpoenaed refuses to comply with the subpoena, the court or judge may commit the person to jail until he or she signifies a willingness to comply with it.

"(g) Deposition of witnesses living in this state may be taken in like manner to be used as evidence in a civil action or probate proceeding pending in any court of the United States or of any other state of the United States or of any foreign country, on application of any party to such civil action or probate proceeding."

months" and that he might be able to travel here for the hearing then.

The plaintiff's counsel responded that the plaintiff was not barred from pursuing his claim "simply because he's unable to come to Connecticut to either be examined or to testify live at trial." The counsel suggested that the plaintiff could be examined by a physician of the defendant's choice in Australia, and that the plaintiff's counsel intended to arrange for his deposition to be taken in Australia.

The plaintiff's counsel had a coworker of the plaintiff, Anthony Yacono, however, available to testify at the hearing. The commissioner ruled that he would hear Yacono's testimony. Yacono testified to the effect that he and the plaintiff worked on a boiler repair crew for the defendant for approximately fifteen years, that this work involved ongoing and significant exposure to asbestos dust, and that he had retired early in 1986 because he had asbestosis.

Following the hearing, the defendant moved in writing to stay the formal hearing, and to compel the plaintiff to come to Connecticut for a prehearing deposition, for an examination by Godar, and for the hearing itself. The defendant contended that it was not reasonable to require it either: (1) to travel to Australia or to engage Australian counsel for purposes of deposing the plaintiff there; or (2) to engage an Australian physician to examine the plaintiff there.[7] Thus, the defendant maintained,

---

[7] In this connection, the defendant asserted that "it is inconceivable that any Australian physician could stand in the shoes of Dr. Thomas Godar for the purpose of a respondents' examination. Anyone who practices before the Workers' Compensation Commission in the state of Connecticut knows the extent of Dr. Godar's training and experience, his familiarity with medical/legal issues in the workers' compensation forum, and his reputation for fairness and integrity. And while there are undoubtedly trained, experienced, and fair physicians in Australia, in the Connecticut workers' compensation forum, there is no substitute for Dr. Godar."

"[t]here are no palatable alternatives, short of [the plaintiff's] return to the state of Connecticut," and that "these concerns . . . mandate [the plaintiff] to return to the United States, if he intends to pursue his claim against the [defendant] formally."[8]

In response, the plaintiff's counsel requested that, in lieu of the plaintiff's physical presence at the hearing, his deposition be taken in Australia for use at the hearing. With respect to Godar's examination, the plaintiff's counsel contended that, although the plaintiff did not contest the appropriateness of an examination by a physician chosen by the defendant, or the defendant's right to have Godar review the case and testify as an expert, a proper balance of the parties' interests would be struck by having the defendant obtain an examination in Australia and provide the results to Godar for his review.

On April 14, 1997, the commissioner ruled as follows: "The [plaintiff] shall avail himself for a deposition, an [independent medical examination], and testify before the undersigned in Connecticut by 9/1/97. Failure to do so and absent good cause may result in a mistrial." The plaintiff petitioned for review by the board, which affirmed the ruling.

The plaintiff did not come to Connecticut on or before September 1, 1997, and on February 12, 1998, the defendant moved for a mistrial and dismissal of the plaintiff's claim. The plaintiff's counsel objected, and indicated that the plaintiff had "advised counsel that he will travel to the United States in May of 1998 . . . ." Accordingly, the plaintiff's counsel requested that the formal hearing be continued "to a date certain in May of 1998." Attached to the plaintiff's counsel's objection and

---

[8] The defendant also suggested, alternatively, that, if the commissioner did not require the plaintiff's presence here, there be "a truly 'independent' medical examination in Australia, for the limited purpose of ascertaining [the plaintiff's] medical status" "vis-a-vis a return to the United States."

request for a continuance, as the basis for the plaintiff's contention of " 'good cause' " for his earlier failure to appear by September 1, 1997, was a letter dated April 28, 1997, from Ann Matthews, a physician in Australia, stating that "[i]t is highly undesirable that [the plaintiff] travels overseas because of a very probable risk of exacerbation of his respiratory tract diseases."[9]

The commissioner scheduled the formal hearing for May 8, 1998. On that date, the defendant and the plaintiff's counsel appeared. The plaintiff's counsel explained that, although the plaintiff had planned to come to Connecticut to pursue his claim and had made travel arrangements, he had not been feeling well for more than one month and that "shortly before he was to leave" he "finally decided that he did not feel well enough to travel. And, his doctor has confirmed that was an appropriate decision." In support of that assertion, the plaintiff's counsel produced a letter from Peter Leonello, the plaintiff's physician, dated April 26, 1998, stating that the plaintiff "is at high risk of developing respiratory problems when travelling in confined spaces such as aeroplanes, and when coming in contact with new viruses in the northern hemisphere. His decision not to travel to the USA, I think, is reasonable on medical grounds."[10]

---

[9] Matthews' letter provided: "[The plaintiff] is a long standing patient in our practice. His main and active medical problem is severe respiratory tract disease. His major symptoms are due to lung disease secondary to protracted asbestos exposure. In addition, he has hyper-reactive airways/asthma. He is troubled by daily cough, dyspnoea and a marked reduction in his exercise tolerance. He requires daily medication for the management of his respiratory disease.

"It is highly undesirable that [the plaintiff] travels overseas because of a very probable risk of exacerbation of his respiratory tract diseases."

[10] Leonello's letter, which was addressed to the plaintiff's counsel, provided: "[The plaintiff] has asked me to write to you again regarding his medical condition.

"As I understand it, he was booked to come to the USA to attend a court hearing early in May this year. He came to see me on 15/4/1998 and stated that he had cancelled his trip to the USA on the basis that the trip was likely to cause an aggravation of his respiratory problems.

The defendant responded by filing a written motion to dismiss. The stated ground was "[the plaintiff's] failure to appear for trial." The defendant indicated that it had scheduled an examination by Godar and a deposition of the plaintiff on dates close to the scheduled hearing date, that the plaintiff's counsel had informed the defendant that the plaintiff would not be appearing for the deposition, examination or hearing for the "ostensible reason . . . [of] ill health," that as of May 7, 1998, the defendant had "seen nothing in writing that supports this assertion," and that "[n]either the [t]rial [c]ommissioner, nor the [defendant] should accept the bare assertion that poor health prevents [the plaintiff] from appearing for trial."

On June 5, 1998, the commissioner granted the defendant's motion to dismiss "with prejudice."[11] The plaintiff appealed to the board, which affirmed the commissioner's decision. This appeal followed.

"Judging from his progress over the last few years, (recurrent asthma and bronchitis requiring the use of bronchodilators, antibiotics and, more recently, cortico steroids) it is also my opinion that he is at high risk of developing respiratory problems when travelling in confined spaces such as aeroplanes, and when coming in contact with new viruses in the northern hemisphere. His decision not to travel to the USA, I think, is reasonable on medical grounds.

"This whole affair—trying to settle a compensation claim in the USA— has also had a toll on his emotional health. He has been very anxious about this matter and I feel that he would not be able to cope emotionally or psychologically with the travel, the medical examinations and the court hearing.

"I have therefore advised him that it is better for both his physical and also emotional well-being that he does not travel to the USA."

In addition, the plaintiff's counsel produced several medical reports and income tax returns of the plaintiff, which were not offered into evidence but were marked for identification. Subsequent to the hearing, the plaintiff moved for admission of the medical reports and the tax returns into evidence. The commissioner did not rule on this motion prior to dismissing the claim. Our decision in this matter does not rest on any of that material.

[11] We consider the term "with prejudice," as do the parties, to mean that the plaintiff's claim is dismissed with finality—without the ability in the plaintiff to revive it by, for example, later appearing for trial.

I

The plaintiff first claims that the commissioner had no authority to dismiss his claim without adjudicating it on the merits. The plaintiff argues that, unlike trial judges, who undoubtedly have the power to dismiss or otherwise deny a claim for failure to comply with discovery orders; see, e.g., Practice Book § 13-14;[12] or for failure to appear for trial; see, e.g., Practice Book § 17-19;[13] a workers' compensation commissioner has no statutory or regulatory authority to dismiss a claim, except on jurisdictional grounds, without adjudicating

---

[12] Practice Book § 13-14 provides: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

[13] Practice Book § 17-19 provides: "If a party fails to comply with an order of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority."

its merits, irrespective of the reasons for such a dismissal. We disagree.

General Statutes § 31-298[14] provides in relevant part: "In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ." This statutory language is capacious enough to include the power to dismiss a claim in an appropriate case.

There is no doubt that a court may, under its inherent equitable powers, dismiss a claim in an appropriate case of unjustifiable disobedience of its orders, or for

[14] General Statutes § 31-298 provides: "Both parties may appear at any hearing, either in person or by attorney or other accredited representative, and no formal pleadings shall be required, beyond any informal notices that the commission approves. In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. No fees shall be charged to either party by the commissioner in connection with any hearing or other procedure, but the commissioner shall furnish at cost (1) certified copies of any testimony, award or other matter which may be of record in his office, and (2) duplicates of audio cassette recordings of any formal hearings. Witnesses subpoenaed by the commissioner shall be allowed the fees and traveling expenses that are allowed in civil actions, to be paid by the party in whose interest the witnesses are subpoenaed. When liability or extent of disability is contested by formal hearing before the commissioner, the claimant shall be entitled, if he prevails on final judgment, to payment for oral testimony or deposition testimony rendered on his behalf by a competent physician, surgeon or other medical provider, including the stenographic and videotape recording costs thereof, in connection with the claim, the commissioner to determine the reasonableness of such charges."

an unjustifiable failure to appear for trial. See *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 232–33, 543 A.2d 728 (1988). Thus, a commissioner has an analogous power to dismiss a claim "in accordance with the rules of equity." General Statutes § 31-298. Furthermore, the statutory grant to the commissioner "to ascertain the substantial rights of the parties and carry out the provisions and intent of" the workers' compensation laws; General Statutes § 31-298; necessarily carries with it the power to dismiss a claim in an appropriate case. The "substantial rights of the parties" include the right of the employer, in an appropriate case, independently to examine the claimant, to notice his deposition, and to insist on hearing his personal testimony at a formal hearing.

Indeed, the plaintiff's argument would mean that, despite the reasonableness of the commissioner's orders, and despite the lack of justification for his failure to comply with them or to appear for a duly scheduled formal hearing, the commissioner could not dismiss the claim. The result would be that the claim would remain in a procedural limbo. We decline to read the broad statutory grant of authority to the commissioner in such a cramped and bizarre way.

The plaintiff's reliance on *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1, 137 A.2d 26 (1927), is misplaced. In that case, the commissioner denied, without a hearing on its merits, an application by the employer to reopen and modify a finding and award in favor of the employee on the basis of newly discovered evidence. Id., 3. This court ruled that the rights of the employer had been prejudiced by the commissioner's ruling because the employer had not been afforded a hearing on the merits of its motion to reopen and modify the award. Id., 9. That case cannot be read as standing for the proposition that the commissioner has no statu-

tory power to dismiss a claim irrespective of the merits of the motion to dismiss.

## II

The plaintiff next contends that the commissioner abused his discretion in dismissing the plaintiff's claim. We agree. We conclude that, under the particular facts of the present case, there were available procedures, short of dismissal of the claim, that would have sufficiently protected the legitimate interests of both the plaintiff and the defendant.

It is implicit in the discussion in part I of this opinion that a commissioner has the discretion to dismiss a workers' compensation claim for an unjustified failure of the employee to appear for a formal hearing, to appear for a deposition, and to subject himself to a properly ordered independent medical examination. Just as in a court, "[d]ecisions on the entry of such sanctions rest within the sound discretion of the [commissioner]. *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 39–40, 404 A.2d 889 (1978). In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the [commissioner] and every reasonable presumption should be given in favor of its correctness. *Dudas* v. *Ward Baking Co.*, 104 Conn. 516, 518, 133 A. 591 [1926] . . . . *Ardoline* v. *Keegan*, 140 Conn. 552, 555, 102 A.2d 352 [1954]. *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 [1970]. *DiPalma* v. *Wiesen*, 163 Conn. 293, 298, 303 A.2d 709 (1972). [T]he ultimate issue is whether the [commissioner] could reasonably conclude as it did. *E. M. Loew's Enterprises, Inc.* v. *Surabian*, 146 Conn. 608, 611, 153 A.2d 463 (1959). *Timm* v. *Timm*, 195 Conn. 202, 207, 487 A.2d 191 (1985)." (Internal quotation marks omitted.) *Rullo* v. *General Motors Corp.*, 208 Conn. 74, 78–79, 543 A.2d 279 (1988). Just as in a court, however, "[d]iscretion imports something more than leeway in

decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 239, 654 A.2d 342 (1995). The commissioner's discretion, therefore, must be exercised consistently with several fundamental principles applicable to workers' compensation proceedings.

The Workers' Compensation Act (act) "provides the sole remedy for employees and their dependents for work-related injuries and death." *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 71, 712 A.2d 938 (1998). Its purpose "is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment." *Middletown* v. *Local 1073*, 1 Conn. App. 58, 65, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). Furthermore, the act "is remedial and must be interpreted liberally to achieve its humanitarian purposes." *Gil* v. *Courthouse One*, 239 Conn. 676, 682, 687 A.2d 146 (1997). In addition, inherent in the act is its analog to the judicial "policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978). The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves . . . . *In re Dodson*, 214 Conn. 344, 363, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L.Ed.2d 205 (1990). Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102,

111, 347 A.2d 53 (1974)." (Internal quotation marks omitted.) *Coppola* v. *Coppola*, 243 Conn. 657, 665–66, 707 A.2d 281 (1998).

These principles lead us to conclude that, before imposing the sanction of dismissal, the commissioner must be satisfied that no other procedures are reasonably available to meet the legitimate interests of both parties. Thus, the sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the employer. That high standard was not met in the present case.

We first note that no testimony regarding any of the underlying assertions was taken. All of the facts concerning the ability or lack thereof of the plaintiff to travel to Connecticut from Australia were reflected in the medical reports from the physicians in Australia. Thus, the deference that we normally would give to the commissioner on issues of credibility is not warranted in the present case, because we are as able as he was to gauge the reliability of those documents.

That documentary record is sufficiently and consistently clear to establish, at least presumptively, that the plaintiff suffers from asbestosis, that he has done so for several years, and that there would have been serious risks to his health created by traveling to Connecticut. The November, 1996 report of Leonello, including the attached X-ray reports, indicated the physician's diagnosis of pulmonary asbestosis, that the plaintiff's symptoms were worse during the winter months, and that the physician had advised him against traveling to the United States—not *only* during the winter months, but "*particularly* now that the winter [was] coming." The April, 1997 report of Matthews reaffirmed the diagnosis of asbestosis, and stated that it was "highly undesirable" that the plaintiff travel overseas because of a

"very probable risk of exacerbation of his respiratory tract diseases." The April, 1998 report of Leonello asserted, consistent with the previous two reports, that the plaintiff was at "high risk of developing respiratory problems when travelling in confined spaces such as aeroplanes, and when coming in contact with new viruses in the northern hemisphere," that the plaintiff's decision not to travel here was, therefore, medically reasonable, and that Leonello had advised him, on *both* physical and emotional grounds, not to travel to Connecticut. Thus, there was a consistent documentary record, from three Australian physicians, that it would have been a serious medical risk for the plaintiff to travel to Connecticut.

Moreover, contrary to the suggestion of the defendant, there was no basis in this record to disregard these written medical opinions. Although it is true that, ordinarily, a commissioner is not required to accept as true the opinion of any medical expert; *Daly* v. *Del-Ponte*, 225 Conn. 499, 517, 624 A.2d 876 (1993); when faced, as the commissioner was in the present case, with a consistent set of medical reports from physicians, albeit in Australia, stating their professional opinions that traveling to Connecticut would involve serious risks to the plaintiff's health, there was no basis not to take those reports at face value.[15]

Furthermore, it is only realistic in today's mobile world to expect that claimants may well no longer live in or near Connecticut by the time they discover that they have contracted asbestosis, and that, as in the present case, by that time they may have moved to other countries thousands of miles away. "Occupational diseases are, from a legal standpoint, peculiar in this—

---

[15] If, however, the reliability of the opinions expressed by Leonello and Matthews in this regard were truly in question, the remedy would have been for an independent examination by an Australian physician of the defendant's choosing, rather than for those opinions simply to be disregarded.

that they arise, not from an accident or event happening at a precise moment, but from a day to day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself." (Internal quotation marks omitted.) *Green* v. *General Dynamics Corp.*, supra, 245 Conn. 72–73.

Therefore, as the United States Supreme Court has stated in a related context: "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests." *Societe Nationale Industrielle Aerospatiale* v. *United States District Court for the Southern District of Iowa*, 482 U.S. 522, 546, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987). The same must be said for our workers' compensation commission.

Finally, there were readily available alternatives to dismissal of the plaintiff's claim. His deposition could have been taken in Australia, with the defendant's counsel either choosing to travel there for that purpose or engaging qualified Australian counsel. Australia is, obviously, a highly sophisticated, English-speaking nation, with a common-law tradition similar to ours. There is no reason to suppose that, if Australian counsel were engaged, it would have been unduly difficult to familiarize him or her with the legal and medical issues involved in the case. Similarly, an independent medical examination on the defendant's behalf could have been arranged in Australia, to be performed by a qualified Australian physician, and his findings and reports, as well as any

X-ray films, could have been supplied to Godar for his review.

It may well be true that, as the defendant contends, a medical examination by an Australian physician would not be the same as an examination performed personally by Godar. We assume that the defendant's assertions regarding Godar's abilities and reputation are accurate. It is also true, however, that not only the defendant's interests are at stake in this determination. The plaintiff has an equally weighty interest in presenting his claim in the only forum legally available to him, without undue risks to his health. The commissioner's decision to dismiss the plaintiff's claim gave undue weight to the defendant's interests and insufficient weight to those of the plaintiff.

The decision of the board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner dismissing the claim, and to remand the case to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.