## WILLIAM BIASETTI *v.* CITY OF STAMFORD ET AL.
### (AC 30867)

DiPentima, Harper and Peters, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 16—officially released August 24, 2010

*Stewart M. Casper*, with whom was *Benjamin H. Pomerantz*, for the appellant (plaintiff).

*James D. Moran, Jr.*, with whom was *Maribeth M. McGloin*, for the appellees (defendants).

*Opinion*

HARPER, J. The plaintiff in this workers' compensation matter, William Biasetti, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) dismissing his claim for benefits under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. On appeal, the plaintiff claims that (1) the board improperly interpreted the phrase "arises from" in General Statutes (Rev. to 2005) § 31-275 (16) (B) (ii) to require a causal connection between his physical injuries and his post-traumatic stress disorder (disorder); (2) the board improperly required a direct physical encounter as a prerequisite to compensability for a mental impairment under § 31-275 (16) (B) (ii); and (3) the commissioner improperly relied on the opinion of a physician who performed an independent medical examination of the plaintiff and made adverse and unreasonable inferences that were not predicated on the subordinate facts. We affirm the decision of the board.

The following facts, as found by the commissioner, and procedural history are relevant to the plaintiff's appeal. At the time of the events giving rise to this appeal, the plaintiff was employed as a police officer with the Stamford police department. On May 24, 2005, the plaintiff was involved in a high speed car chase on Interstate 95 during a torrential rainstorm. At the

conclusion of the high speed chase, the plaintiff was involved in a gun battle with the suspects and was in fear of losing his life. During the course of the gun battle, the plaintiff injured his right elbow and left knee as he attempted to leap over a guardrail. As a result of injuries sustained while hurdling the guardrail, the plaintiff was diagnosed with a 2 percent permanent partial disability to his right upper extremity and a 5 percent permanent partial disability to his left lower extremity. The plaintiff received disability benefits for those physical injuries, the compensability of which the parties do not dispute. The plaintiff was also diagnosed with the disorder as a result of the events of May 24, 2005. The plaintiff brought a claim for compensation for the disorder under the act, which the commissioner denied.

At the hearing before the commissioner, the parties did not dispute that the plaintiff was suffering from the disorder as a result of the events of May 24, 2005, nor is that issue disputed on appeal. Rather, the parties disputed only the compensability of the plaintiff's disorder. At the hearing, the plaintiff offered testimony from Joel S. Albert, his treating psychiatrist. Albert testified that the plaintiff's injuries, the high speed chase and the gun battle were inextricable parts of one event that gave rise to the plaintiff's disorder. Albert also testified, however, that, absent the surrounding circumstances, the plaintiff's physical injuries alone would not have caused the plaintiff's disorder. The defendants[1] offered the deposition testimony of Mark Rubinstein, a psychiatrist who performed the independent medical examination of the plaintiff. Rubinstein testified that the plaintiff's injuries were not a causative factor in the development of the plaintiff's disorder, which, in Rubinstein's opinion, would have developed absent the injuries, based on "the psychic experience and the actual

---

[1] The defendants in this matter are the city of Stamford and its workers' compensation insurer, Webster Risk Insurance.

experience with the threat of death that [the plaintiff] faced on May 24, 2005."

The commissioner determined that, in order to be compensable under the act and, specifically, § 31-275 (16) (B) (ii), "the [plaintiff's disorder] must arise from some physical injury suffered in the May 24, 2005 incident." In dismissing the plaintiff's claim, the commissioner found that "[t]he weight of the medical evidence does not support the contention that the [plaintiff's disorder] arose from, or was caused by, any physical injury or occupational disease suffered by the [plaintiff] on the evening of May 24, 2005." The plaintiff filed a lengthy motion to correct that, with the exception of one minor factual correction not relevant to this appeal, the commissioner denied. The plaintiff appealed from the commissioner's decision to the board. Finding no error, the board unanimously affirmed the commissioner's decision. This appeal followed. See General Statutes § 31-301b.

I

The plaintiff first claims that, in affirming the commissioner's decision, the board improperly interpreted the words "arises from" in § 31-275 (16) (B) (ii) to require a causal connection between the plaintiff's physical injuries and his disorder. The plaintiff argues that § 31-275 (16) (B) (ii) should be interpreted to require only a showing that his mental impairment was "accompanied by" a physical injury. We disagree.

As an initial matter, we set forth the standard of review applicable to the board's interpretations of the workers' compensation statutes. "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not

previously been subject to judicial scrutiny." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 572, 986 A.2d 1023 (2010).

The plain language of § 31-275 (16) (B) (ii) and relevant case law from both this court and our Supreme Court support the board's conclusion that, for the plaintiff to demonstrate his entitlement to benefits for the disorder under the act, there must be a causal relationship between the physical injuries he sustained on May 24, 2005, and his disorder. At the time of the plaintiff's injuries, § 31-275 (16) (B)[2] provided in relevant part: " 'Personal injury' or 'injury' shall not be construed to include . . . (ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ." General Statutes (Rev. to 2005) § 31-275 (16) (B). This court previously has interpreted the plain language of § 31-275 (16) (B) (ii) to require a showing of causation between a physical injury or occupational disease and a mental impairment for which compensation benefits are sought. *Chesler* v. *Derby*, 96 Conn. App. 207, 212, 899 A.2d 624, cert. denied, 280 Conn. 909, 907 A.2d 88 (2006). Specifically, in *Chesler*, this court concluded that the "language of clause (ii) of § 31-275 (16) (B) is plain and unambiguous. It excludes mental or emotional impairments from the

---

[2] It is well settled that when determining the obligations of the parties, we apply the statutory authority that existed at the time of the injury. See *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994) (applying revision of act in place at time of injury).

We note that Public Acts 2005, No. 05-208, § 4, effective October 1, 2005, amended § 31-275 (16) (B) (ii) to add a special exception for police officers. Section 31-275 (16) (B) (ii) (II) now includes within the definition of a compensable injury, a mental impairment which arises "from such police officer's use of deadly force or subjection to deadly force in the line of duty, regardless of whether such police officer is physically injured, provided such police officer is the subject of an attempt by another person to cause such police officer serious physical injury or death through the use of deadly force, and such police officer reasonably believes such police officer to be the subject of such an attempt. . . ."

definition of personal injury under the [act] except when such impairments *are caused by a physical injury or occupational disease.*" (Emphasis added.) Id.

Additionally, in interpreting § 31-275 (16) (B) (ii) to require a causal relationship between the plaintiff's physical injury and his disorder, both the commissioner and the board relied on our Supreme Court's ruling in *Biasetti* v. *Stamford*, 250 Conn. 65, 735 A.2d 321 (1999). Likewise, we deem *Biasetti* to be instructive. In *Biasetti*, the plaintiff[3] appealed from the denial of workers' compensation benefits for the disorder he suffered as a result of another high speed chase and gun battle he was involved in while on duty as a Stamford police officer. Id., 67–69. In the incident at issue in that case, however, the plaintiff did not suffer any physical injury. Id. The court held that, although the plaintiff's disorder was an occupational disease, it was not compensable under the act because it did not arise from a physical injury or occupational disease. Id., 80–82. Our Supreme Court concluded: "Section 31-275 (16) (B) (ii) includes within the definition of 'personal injury' an emotional impairment that *arises from* or is caused by a physical injury or occupational disease. It does not, however, extend coverage to an emotional impairment *which itself is* an occupational disease. To conclude otherwise would be to ignore the causation requirement encompassed within the term 'arises.'" (Emphasis in original.) Id., 79; cf. *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 225–26, 752 A.2d 1069 (2000) (applying principles set forth in *Biasetti* but concluding that plaintiff's mental impairment was caused by her physical injuries and therefore covered by act).

Thus, both this court and our Supreme Court explicitly have interpreted the term "arises from" in § 31-275

[3] *Biasetti* v. *Stamford*, supra, 250 Conn. 65, involved the same plaintiff before us in the current matter but addressed a distinct claim for benefits under the act arising out of a separate series of events.

(16) (B) (ii) to require a causal relationship between a physical injury or occupational disease and a claimed mental impairment in order for the mental impairment to be compensable under the act. The plaintiff's argument that under § 31-275 (16) (B) (ii) he need only show that the mental impairment was "accompanied by" a physical injury, therefore is contrary to both the plain meaning of "arises from" and prior judicial interpretations of § 31-275 (16) (B) (ii). For these reasons, we conclude that the board properly interpreted "arises from" in § 31-275 (16) (B) (ii) to require a causal relationship between the plaintiff's injury and his disorder.

II

The plaintiff next claims that the board improperly required, as a prerequisite for benefits under the act, that a claimed mental impairment be causally related to a direct physical encounter. The plaintiff asserts that the board improperly distinguished his case from other cases involving compensable claims arising from a mental impairment on the ground that his case did not involve a direct physical encounter. The plaintiff therefore interprets the board's opinion as imposing an additional requirement of a direct physical encounter before a claim for benefits for a mental impairment could be compensable. We reject this claim on the basis of our conclusion that the board did not impose such a requirement.

Before the board, the plaintiff argued that his case is similar to previous cases in which compensation had been awarded for the disorder. In support of this position, the plaintiff relied on three of the board's prior decisions involving physical altercations that gave rise to mental impairments.[4] When differentiating the plaintiff's case from these prior decisions, the board stated

---

[4] The cases relied on by the plaintiff and differentiated by the board were *David* v. *Beloff Billiards, Inc.*, No. 4843 CRB-4-04-8 (August 15, 2005) (disorder compensable when it arose from broken fingernail and tinnitus sustained while pushing coworker out of way of gunshot), *Bilsky* v. *Ansonia*

that the "lack of a direct physical encounter . . . serves to set this matter apart from the precedent reviewed herein." Ultimately, however, the board concluded that "in light of the evidentiary submissions regarding the genesis of the [plaintiff's] physical injuries and the *role those injuries played* relative to the development of the [symptoms of the plaintiff's disorder], we conclude that the circumstances of the instant matter distinguish it sufficiently from the prior cases discussed herein such that we must affirm the factual determinations made by the trial commissioner." (Emphasis added.)

Although the board did differentiate the plaintiff's case from other workers' compensation cases in which injuries associated with a direct physical encounter gave rise to compensable claims for the disorder, the board did not expressly conclude that a direct physical encounter is a requirement for all compensable disorder claims under § 31-275 (16) (B) (ii). Absent such an express assertion, we will not assume that the board intended to impose such a requirement, and we need not address the propriety of such a requirement absent any indication that it was imposed by the board. Moreover, on the basis of our reading of the board's decision, it is apparent that the board ultimately affirmed the decision of the commissioner after finding that the commissioner properly determined that the plaintiff's injuries did not cause the plaintiff's disorder, as required by § 31-275 (16) (B) (ii).

III

As he did before the board, the plaintiff also claims that the commissioner improperly relied on the expert

*Copper & Brass*, No. 4703 CRB-5-03-8 (August 23, 2004) (claim remanded for findings as to causal connection between disorder and injuries plaintiff suffered when slapped in face by supervisor), and *Nunes* v. *State*, No. 4360 CRB-2-01-2 (January 16, 2002) (disorder found compensable when it arose from physical altercation with gunman, during which plaintiff sustained lacerations to hands).

opinion of Rubinstein, the physician who performed the independent medical examination of the plaintiff,[5] and made adverse and unreasonable inferences that were not predicated on the subordinate facts. We are not persuaded.

In our review of workers' compensation appeals, "we note that when a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts." (Internal quotation marks omitted.) *Romanski* v. *West Hartford*, 34 Conn. App. 307, 316, 641 A.2d 439 (1994). "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from

---

[5] The plaintiff also claims that the board improperly deferred to the commissioner's reliance on Rubinstein's expert opinion. The plaintiff argues that the commissioner's credibility determination was not entitled to the deference customarily afforded such determinations because the defendants, the city of Stamford and its workers' compensation insurer, Webster Risk Insurance, offered Rubinstein's testimony in the form of a deposition transcript, rather than live testimony. In support of this claim, the plaintiff relies on our Supreme Court's holding in *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 756 A.2d 845 (2000). In *Pietraroia*, our Supreme Court did not afford deference to the commissioner's credibility determinations when such determinations were based solely on documentary evidence. Id., 75. Specifically, our Supreme Court noted: "[N]o testimony regarding any of the underlying assertions was taken. All of the facts concerning [the relevant issues] . . . were reflected in the medical reports from the physicians . . . . Thus, the deference we normally would give to the commissioner on issues of credibility is not warranted in the present case, because we are as able as he was to gauge the reliability of those documents." Id.

The plaintiff's reliance on *Pietraroia* is unpersuasive. In the present case, the commissioner's findings were based on the live testimony of the plaintiff and the plaintiff's expert, Albert, as well as the deposition testimony of Rubinstein. Thus, we are not faced with a situation analogous to that addressed by our Supreme Court in *Pietraroia*, in which the commissioner's determinations were based solely on documentary evidence. The commissioner's credibility determinations therefore are entitled to deference, as the commissioner is "the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 118 Conn. App. 104, 107, 983 A.2d 277 (2009).

an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 572. "It is . . . immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable, and [the commissioner's choice], if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 799, 669 A.2d 1214 (1996). "[T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 118 Conn. App. 104, 107, 983 A.2d 277 (2009).

In light of this standard, we conclude that the commissioner's reliance on Rubinstein's opinion was in no way improper, nor were any of her inferences based on that opinion unreasonable. The commissioner made several findings in support of her conclusion that the plaintiff's disorder was not caused by his physical injuries, all of which are supported by the record. In her findings, the commissioner noted that although the plaintiff's expert, Albert, originally testified that the plaintiff's injuries and the gun battle were inextricable parts of one event, Albert later agreed that the "true precipitating factor" of the plaintiff's disorder was the life-threatening event, not the injuries. The commissioner also relied on Rubinstein's opinion that the plaintiff's injuries did not play a causative role in the plaintiff's disorder. In addition, the commissioner relied on the plaintiff's own testimony about the events of May 24, 2005, and his disorder. It is the role of the commissioner to make credibility determinations on the basis of the conflicting testimony of the witnesses, and we will not disturb those credibility determinations on appeal. See, e.g., *Greene* v. *Aces Access*, 110 Conn.

App. 648, 653, 955 A.2d 616 (2008). On the basis of the record, we conclude that the commissioner's decision was not based on an incorrect application of the law to the subordinate facts, nor was it the result of any inferences unreasonably or illegally drawn from them.[6] See *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 572.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[6] The plaintiff also argues, as one aspect of his claim, that the commissioner improperly failed to conclude that the disorder was compensable because the events of May 24, 2005, exacerbated a preexisting diagnosis of the disorder. We note that exacerbation of the preexisting disorder may qualify as a compensable mental impairment under the act, provided the exacerbation arose from a physical injury or occupational disease. See *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 38, 787 A.2d 541 (2002). We will not address such a claim here, however, as the commissioner made no findings regarding exacerbation of the preexisting disorder, but, to the contrary, found that the plaintiff's disorder was caused by the events of May 24, 2005, not the physical injuries sustained on that date.