******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

DEFOREST W. SMITH ET AL. *v.* H. PEARCE
REAL ESTATE COMPANY, INC.

THE MILFORD BANK *v.* DEFOREST
INDUSTRIES, INC., ET AL.
(AC 47261)

Cradle, Suarez and Clark, Js.*

*Syllabus*

The plaintiffs, S, a licensed real estate broker, and D Co., a real estate brokerage owned by S, appealed from the judgment of the trial court awarding them damages in their breach of contract action arising from an asset purchase agreement between the plaintiffs and the defendant and from the trial court's judgment in an interpleader action, awarding a contested real estate commission to the defendant. They argued, inter alia, that the court improperly found that the defendant had proven its special defense and was entitled to a setoff for the overpayment of a commission that it had previously paid to S pursuant to the agreement. *Held*:

The trial court's finding that the sale of a certain property was not pending as of the date required by the parties' agreement and, thus, that the defendant was entitled to a setoff for its payment to S as a commission for the sale of that property was not clearly erroneous, as the court's finding was supported by the evidence.

This court declined to review the plaintiffs' inadequately briefed claim that the trial court improperly concluded that S was personally liable for the setoff.

The trial court properly concluded that the parties' agreement, which included a schedule of excluded assets, limited assets excluded from the sale to those leases renewed on or about the dates listed next to each lease renewal on the schedule.

Argued January 16—officially released April 15, 2025

*Procedural History*

Action, in the first case, to recover damages for, inter alia, breach of contract, and for other relief, and action, in the second case, seeking an interlocutory judgment, and for other relief, brought to the Superior Court in

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

the judicial district of Ansonia-Milford, where the cases were consolidated for trial; thereafter, the cases was tried to the court, *Grogins, J.*; judgment, in the first case, for the plaintiffs, and judgment, in the second case, for the defendant H. Pearce Real Estate Company, Inc., from which the plaintiffs in the first case and the named defendant in the second case, appealed to this court. *Affirmed.*

*John-Henry M. Steele*, for the appellants (plaintiffs in the first case and named defendant in the second case).

*Peter T. Fay*, for the appellee (defendant H. Pearce Real Estate Company, Inc., in each case).

*Opinion*

CRADLE, J. In this appeal from the judgments in two consolidated actions arising from an asset purchase agreement, the plaintiffs in the first action, DeForest W. Smith and DeForest Industries, Inc. (DII),[1] challenge the judgments of the trial court, rendered after a court trial. On appeal, the plaintiffs claim that the court improperly (1) found that the defendant H. Pearce Real Estate Company, Inc. (Pearce) was entitled to a setoff for the overpayment of a commission that it previously had paid to Smith, (2) concluded that Smith was personally liable to Pearce for the setoff, and (3) rejected their claim that certain lease renewals were excluded from its sale of assets to Pearce.[2] We affirm the judgments of the trial court.

The following facts and procedural history, as set forth by the trial court, are relevant to our resolution

---

[1] In the second action, the trial court granted the motion for an interlocutory judgment of interpleader filed by the plaintiff, The Milford Bank, with respect to a commission claimed by both DII and H. Pearce Real Estate Company, Inc., and awarded the commission to H. Pearce Real Estate Company, Inc. The Milford Bank is not participating in this appeal. We therefore refer to Smith and DII as the plaintiffs.

[2] We address the plaintiffs' claims in a different order than they are set forth in their principal appellate brief.

of this appeal. Smith is a licensed real estate broker and the owner of DII, which is a commercial real estate brokerage located in Milford. Pearce is also in the business of commercial real estate, with an office located in North Haven. On or about June 19, 2012, the plaintiffs and Pearce entered into a five year asset purchase agreement (agreement), whereby Smith agreed to sell certain business assets to Pearce. Those assets included, but were not limited to, listings for commercial real estate sales and leases. The agreement provided, however, that certain real estate sales listings and lease renewals were excluded from the sale of assets. These excluded assets were identified in schedule 1.1 (a) of the agreement. The effective date of the agreement was July 17, 2012, and the end date of the agreement was July 17, 2017.

As part of the agreement, Smith and the other real estate brokers who worked for DII were hired by Pearce to work as independent real estate brokers in connection with transactions involving the purchase, sale, and leasing of commercial real estate. Pearce agreed to pay certain percentages[3] of the gross commission income produced by Smith and his agents and received by Pearce for transactions that were completed between July 17, 2012, and July 17, 2017, and transactions that were pending as of July 17, 2017, and closing within twelve months thereafter.[4]

On December 18, 2018, the plaintiffs commenced an action (Smith action) seeking compensatory damages

---

[3] The commissions to be paid to Smith and the DII brokers were set forth in the Pearce Commercial Policies and Procedures Manual which was admitted as a full exhibit at trial.

[4] Schedule 1.1 of the agreement provides, inter alia: "(a) All client listing agreements of the Business as of the Closing Date, as listed on Schedule 1.1 (a) attached hereto, but specifically excluding all client listing agreements for which letters of intent or purchase agreements have been signed prior to Closing, and client listing agreements for which commissions have been earned but not yet paid as of the Closing date, as listed on Schedule 1.1 (a) attached (the 'Seller Agreements')."

for unpaid commissions and bonuses from certain real estate sales and lease renewals allegedly due pursuant to the agreement. Although the plaintiffs' operative complaint dated October 24, 2019, consisted of six counts, counts four through six were stricken by the court and the plaintiffs withdrew count two, leaving only counts one and three. In count one, Smith alleged that Pearce failed to pay him bonus compensation as required under the agreement for certain transactions that he brokered for Pearce. In count three, the plaintiffs alleged that Pearce received commissions from lease renewals that were identified as excluded assets in the agreement but failed to remit those commissions to the plaintiffs. Pearce denied the plaintiffs' allegations and asserted a special defense as to count one, claiming that it was entitled to a setoff in the amount of $80,000 for an erroneous overpayment to Smith arising from the sale of commercial property located at 126 Boston Post Road in Milford.

In 2021, The Milford Bank (bank) filed a related action (interpleader action), regarding competing claims by DII and Pearce to a commission from a lease renewal for a property owned by the bank, located at 9 Depot Street in Milford, which was one of the lease renewals at issue in count three of the Smith action. The court entered an interlocutory judgment of interpleader wherein it explained that the bank filed that action "claiming that [DII and Pearce] be required to interplead together concerning their claims to funds in the hands of the [bank] . . . ." The court ordered DII and Pearce to "interplead together by appropriate pleading, stating their respective claims to the funds, and that the [bank]-deliver to the clerk of this court to await the further and final order of this court." The cases were consolidated for trial and all parties stipulated that the court's decision in the Smith action would resolve the issue in the interpleader action.

On December 12, 2022, the cases were tried to the court. Both parties were represented by counsel. Smith was the only witness who testified at trial. Both parties submitted several documents, all of which were admitted into evidence by agreement and without objection. On October 10, 2023, the court filed a memorandum of decision wherein it concluded that, as to count one, Smith was entitled to bonus compensation in the amount of $31,582.50 but that Pearce had met its burden of proof on its special defense and was entitled to a setoff in the amount of $80,000 for a commission that it had erroneously paid Smith in connection with the sale of 126 Boston Post Road. The court therefore concluded that Smith owed Pearce $48,417.50, plus costs. As to count three, the court found that the plaintiffs were entitled to commissions for certain, but not all, lease renewals in the amount of $2173.58, plus costs. With respect to the interpleader action, the court found in favor of Pearce after determining that the lease renewal with respect to 9 Depot Street in Milford was not part of the excluded assets set forth in the agreement and awarded it the full amount of the contested commission. The plaintiffs thereafter filed a motion to reargue, which the court denied. This appeal followed.

I

The plaintiffs first claim that the court improperly concluded that Pearce was entitled to a setoff for the overpayment of a commission that it had paid to Smith for the sale of 126 Boston Post Road. Specifically, the plaintiffs argue that the court erroneously found that the sale of 126 Boston Post Road was not pending as of July 17, 2017. We disagree.

In assessing this claim, the court explained: "In making its decision regarding the setoff, the court has . . . reviewed . . . Pearce's commercial property summary form for the sale of 126 Boston Post Road . . . as well

as the commercial division disbursement form, prepared by Smith. . . . The court has also reviewed the agreement, and specifically the applicable section of that agreement (§ 2.1), pertaining to this issue. Section 2.1 of the agreement provides in relevant part: 'Consideration. As consideration for the seller's sale of the assets to the buyer, the buyer agrees to pay . . . twenty percent (20%) of the gross commission income produced by the agents, including without limitation commissions due . . . for transactions completed after the effective date [of July 1, 2012] and prior to July 1, 2017, and transactions pending as of July 17, 2017 and closing within twelve (12) months thereafter . . . .

"The court importantly notes that the date listed on the summary form for the sale of 126 Boston Post Road is July 26, 2017. The offer date listed on the disbursement form prepared by Smith is July 25, 2017. The closing date listed on the summary sheet for the sale of this property is December 29, 2017. . . . The closing date listed on the disbursement form for the sale of this property is September 30, 2017. . . . The court finds that the sale of this property was not completed after the effective date of the agreement and prior to July 1, 2017. The court also finds that this transaction was not pending as of July 17, 2017. This was a condition required by § 2.1 of the agreement for the plaintiff to receive the $80,000 consideration payment." The court therefore found that Pearce "erroneously paid the plaintiff the $80,000 consideration payment for the sale of [126 Boston Post Road] . . . ."

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the

evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 630, 289 A.3d 609 (2023).

The plaintiffs argue that the court's finding that the sale of 126 Boston Post Road was not pending as of July 17, 2017, was clearly erroneous because Pearce failed to submit a signed letter of intent or a signed purchase and sales agreement to establish the date of the transaction. In so arguing, the plaintiffs cite to Smith's testimony, which is consistent with the agreement, that "transaction pending" means a transaction "where there is either a letter of intent or a purchase agreement in existence as of July 17, 2017." Although a signed letter of intent or contract could have established the date at issue, it does not necessarily follow that the introduction into evidence of those particular documents is the only way to establish that fact. Here, the court properly considered Pearce's records, which were admitted into evidence without objection or limitation, and from the dates listed in those records, reasonably inferred that the sale of 126 Boston Post Road was not pending as of July 17, 2017. It is well settled that "[e]vidence admitted without objection remains evidence in the case subject to any infirmities due to any inherent weaknesses. . . . A failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint as to the admission of the evidence. . . . If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have." (Citation omitted; internal quotation marks omitted.) *Dufresne* v. *Dufresne*, 191 Conn. App. 532, 546–47, 215 A.3d 1259 (2019). The court, therefore, in its discretion was entitled to rely on this evidence to the extent it deemed it persuasive.

To the extent the plaintiffs contend that the court erred in considering the documentary evidence admitted without limitation, they have cited no legal authority, nor are we aware of any, that would restrict the court's ability to do so.

The plaintiffs also argue that there was "no evidence in the record to support the trial court's conclusion that: 'The offer date listed on the disbursement form prepared by Smith [in trial exhibit A] is July 25, 2017.' " The plaintiffs are correct. The disbursement form lists the "posting date" of the transaction as July 25, 2017. The commercial property summary form, however, lists the offer date for the property as July 26, 2017. The court's error in identifying the document that contained the offer date does not convince us that the court erred in finding that the transaction was not pending as of July 25, 2017.

In sum, we are persuaded that the court properly considered the documentary evidence introduced at trial and the dates contained in those documents relating to the sale of 126 Boston Post Road, all of which occurred after July 17, 2017. We therefore conclude that the court's finding was supported by the evidence, and, on the basis of that evidence, we are not left with the definite and firm conviction that a mistake has been committed. Accordingly, the court's finding that the sale of 126 Boston Road was not pending as of July 17, 2017, was not clearly erroneous.

## II

The plaintiffs also claim that the court improperly concluded that Smith was personally liable for the set-off. Specifically, the plaintiffs argue that "it was error for the trial court to find in favor of [Pearce] against Smith personally on [Pearce's] $80,000 claim for setoff" because Pearce "offered no proof at trial that DII's corporate veil should be pierced."

This court "repeatedly ha[s] stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citations omitted; internal quotation marks omitted.) *1st Alliance Lending, LLC* v. *Dept. of Banking*, 229 Conn. App. 664, 704–705, 328 A.3d 681 (2024), cert. denied, 351 Conn. 906, 330 A.3d 132 (2025).

This claim comprises only two brief paragraphs of the plaintiffs' brief to this court, in which they baldly assert that Pearce was required to pierce the corporate veil to prevail on its claim of setoff. Although the plaintiffs' argument contains two case citations, they fail to recite the principles in those cases on which they rely and apply those principles to the facts of this case. Because the plaintiffs have afforded this claim only cursory attention without substantive discussion, we conclude that it is inadequately briefed and, accordingly, decline to address it.

### III

Finally, the plaintiffs claim that the court erred by rejecting their claim that certain lease renewals were specifically excluded from its sale of assets to Pearce. Specifically, the plaintiffs claim that the court improperly concluded that the lease renewals listed on the

excluded asset schedule were limited by the expected lease renewal dates listed on that schedule. We disagree.

In addressing the plaintiffs' claim pertaining to the lease renewals at issue, the court explained: "In count three of the plaintiffs' complaint, [the plaintiffs] claim that DII is owed commissions from certain lease renewals that were specifically excluded from its sale of assets to [Pearce] in the agreement. The plaintiffs assert that these lease renewals were identified as excluded assets in Schedule 1.1 (a) . . . . The list of 'excluded assets' specifically identifies the excluded lease renewals by property address, tenant name, and the approximate lease renewal date. [Pearce] contends that the lease renewals at issue were not excluded assets and, in fact, were included in the sale of the plaintiff's business [assets] to [Pearce]. . . . Pearce . . . asserts that the dates for the lease renewals listed on the excluded asset schedule do not match the dates of the lease renewals which are the basis for the plaintiffs' claims and, therefore, cannot be the same lease renewals which are listed on the excluded asset schedule.[5]

"The plaintiffs contend that the lease renewals listed on the excluded asset schedule are not limited by the expected lease renewal dates listed on said schedule.

---

[5] For instance, the agreement lists as excluded the lease renewal for "408 Woodmont Road, Milford . . . 12/2015." The plaintiffs claimed commissions for the March 4, 2016, June 19, 2017 and March 13, 2019 renewals of the lease of that property. The agreement lists as excluded the lease renewal for "9 Depot Street, Milford . . . 5/2013." The plaintiffs claimed commissions for the November 2, 2016 and November 10, 2019 renewals of the lease of that property. The agreement lists as excluded the lease renewal for "78 Rebeschi Drive, North Haven . . . 10/1/2015." The plaintiff claimed the commission for the May 20, 2019 renewal of the lease of that property. The agreement lists as excluded the lease renewal for "70-76 Robinson Blvd., Orange . . . ." This property is listed twice, for two separate tenants, with the dates January 31, 2014, and March 2, 2014. The plaintiffs claimed commissions for the December 31, 2013 and January 6, 2017 renewals of those leases, respectively.

The plaintiffs further assert that the lease renewals at issue are identified by the property address and the tenant, regardless of the date [on] which the lease renewed. To support [their] position, the plaintiffs assert that the lease renewals at issue fall under the definition of 'accounts receivable,' which is defined in the agreement as follows: 'Accounts receivable shall include, without limitation, commissions due to [Smith and/or DII] on lease renewals for leases executed prior to the Closing Date.' " (Footnote added.)

In considering this claim, the court noted the principle that, "in construing contracts, [the courts] give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Johnson* v. *Vita Built, LLC*, 217 Conn. App. 71, 85, 287 A.3d 197 (2022). The court then reasoned: "In interpreting this agreement and the excluded asset schedule, the court finds that the date listed next to each lease renewal on the excluded asset schedule is the expected renewal date for that lease. This date identifies those lease renewals, which the plaintiffs intended to be excluded from the agreement." The court further reasoned that "the principle that 'the expression of one thing is the exclusion of another' suggests that the parties did not intend for any lease renewals, other than those occurring on the dates listed on the schedule, to be excluded assets. *Biro* v. *Matz*, 132 Conn. App. 272, 282, 33 A.3d 742 (2011)."

In reviewing the plaintiffs' challenge to the court's interpretation of the agreement, we are guided by the following principles. "It is well established that [a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction.

. . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Wethington* v. *Wethington*, 223 Conn. App. 715, 730–31, 309 A.3d 356 (2024). "The interpretation of definitive contract language is a question of law over which our review is plenary." (Internal quotation marks omitted.) *AGW Sono Partners, LLC* v. *Downtown Soho, LLC*, 343 Conn. 309, 322, 273 A.3d 186 (2022).

The plaintiffs claim that the court, relying on the lease renewal dates set forth in the excluded asset schedule, improperly determined that only leases that had renewed on or about those dates were excluded from the sale of assets. As they did in the trial court, the plaintiffs contend that *all* renewals of leases that were executed prior to the date of the agreement were excluded from the sale of assets. The plaintiffs concede that the agreement does not contain the word "all" but argue that the use of the word "renewals" means all lease renewals. If that were true, there would be no reason to have listed the lease renewals at issue separately on the schedule of excluded assets. Indeed, as the court found, to read it as the plaintiffs suggest would render the listed dates superfluous, which, as noted herein, is disfavored by our law. We therefore agree with the court's conclusion that the dates listed next to each lease renewal limited the excluded assets to the leases renewed on or about those dates.

The judgments are affirmed.

In this opinion the other judges concurred.