******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## PATRICIA BUCHANAN *v.* TOWN OF EAST HARTFORD
### (AC 47085)

Moll, Suarez and Clark, Js.

*Syllabus*

The defendant town appealed from the decision of the Compensation Review Board reversing the decision of the administrative law judge, who had dismissed the plaintiff's claim for survivorship benefits pursuant to statute (§ 31-306) following the death of her husband, a town police officer. The defendant claimed, inter alia, that the board improperly substituted its own factual findings for those of the administrative law judge. *Held*:

The board improperly substituted its judgment on causation for that of the administrative law judge, whose factual findings were not clearly erroneous and which found support in the record, as it was not the role of the board to retry the issue of causation.

The board's decision could not be affirmed on the plaintiff's alternative ground that, when the decedent suffered a physical injury responding to an apartment complex fire, it aggravated a preexisting mental health condition, which, in turn, caused him to die by suicide, as the administrative law judge, faced with conflicting evidence on the question of causation, comprehensively summarized the evidence presented, weighed that evidence, and made appropriate credibility determinations in making its factual findings on the essential issues in the case.

Argued January 8—officially released July 15, 2025

*Procedural History*

Appeal from the decision of the administrative law judge for the First District of the Workers' Compensation Commission dismissing the plaintiff's claim for survivor's benefits, brought to the Compensation Review Board, which reversed the decision of the administrative law judge, and the defendant appealed to this court. *Reversed*; *judgment directed*.

*Timothy D. Ward*, for the appellant (defendant).

*James M. Quinn*, with whom was *Joseph P. Quinn, Jr.*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. In this workers' compensation matter, the defendant, the town of East Hartford, appeals from the decision of the Compensation Review Board (board), which reversed the decision of the administrative law judge for the First District of the Workers' Compensation Commission (commission), dismissing the claim for survivorship benefits under General Statutes § 31-306[1] filed by the plaintiff, Patricia Buchanan, the surviving spouse of the deceased employee, Paul Buchanan (decedent). On appeal, the defendant claims, inter alia, that the board (1) improperly substituted its own factual findings for those of the administrative law judge, which were not clearly erroneous, and (2) misapplied General Statutes (Rev. to 2013) § 31-275 (16) (A) and (B)[2] by including post-traumatic stress disorder and/or depression as qualified injuries under the Workers' Compensation Act (act), General Statutes § 31-275

---

[1] General Statutes § 31-306 (a) provides in relevant part: "Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease . . . ."

[2] General Statutes (Rev. to 2013) § 31-275 (16) provides in relevant part: "(A) 'Personal injury' or 'injury' includes, in addition to accidental injury that may be definitely located as to the time when and the place where the accident occurred, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease.

"(B) 'Personal injury' or 'injury' shall not be construed to include . . . (ii) A mental or emotional impairment, unless such impairment (I) arises from a physical injury or occupational disease . . . ."

After the decedent's death, § 31-275 (16) (B) (ii) was amended to provide that a mental or emotional impairment may qualify as a "personal injury" if such impairment, "in the case of an eligible individual as defined in section 31-294k, is a diagnosis of post-traumatic stress injury as defined in section 31-294k that meets all the requirements of section 31-294k." General Statutes § 31-275 (16) (B) (ii); see also Public Acts 2021, No. 21-107, § 1. The legislature further enacted General Statutes § 31-294k in 2019, which provides benefits for police officers, parole officers, and firefighters for post-traumatic stress disorder under certain situations. Accordingly, all references in this opinion, unless otherwise stated, are to the 2013 revision of the statute.

et seq. The plaintiff raises four alternative grounds on which she claims we may affirm the board's decision. See footnote 8 of this opinion. We agree with the defendant's first claim and disagree with the alternative grounds for affirmance raised by the plaintiff. Accordingly, we reverse the decision of the board and remand the case to the board with direction to affirm the decision of the administrative law judge.

The following facts, as found by the administrative law judge or otherwise undisputed in the record, and procedural history are relevant to our resolution of this appeal. The decedent began working as a police officer for the East Hartford Police Department (department) in 1989. Although he served with distinction, the stress of the work weighed on him. The administrative law judge found that the decedent had experienced a great deal of emotional trauma as a police officer and outlined several traumatic incidents, including responding to a murder/suicide in 2006, and having to comfort a teenager who had been stabbed and who subsequently died in his arms. The plaintiff testified before the administrative law judge that, after he had been working for the department for about ten years, the decedent began to experience restless sleep and he often woke up in the middle of the night from a nightmare.

The decedent began sharing with his primary care physician, Raymond Kurker, that he was feeling anxious and depressed. As early as 2003, and for many years thereafter, Kurker prescribed the decedent medications for depression and anxiety. The plaintiff testified that, despite these medications, the decedent's condition did not improve. The decedent began to lose interest in activities that he formerly enjoyed and complained of chronic back and knee pain. He would talk about past cases or traumas that were upsetting to him and would appear uncomfortable and "panicky" when going out to places such as restaurants.

As time passed, the decedent's condition continued to worsen. He eventually began to perform administrative duties inside the department because his patrol duties were overwhelming him. The decedent subsequently became dissatisfied with his administrative work because his duties over time had continually increased, which caused him further stress. As a result, the decedent requested to return to patrol duties in September, 2012. The plaintiff noticed that the decedent once again experienced sleeplessness, loss of appetite and weight loss upon his return to patrol duties. The plaintiff testified that the decedent was afraid to reach out for help because he thought that, if he shared his struggles with the department, his service weapon would be taken away.

On December 18, 2012, the decedent sought assistance through the Employee Assistance Program at the department, but the plaintiff testified that this appointment did not help him. On December 24, 2012, the decedent was seen at Eastern Connecticut Health Network at Manchester Memorial Hospital. The medical records on that date indicate that the decedent had been suffering from depression and anxiety.

The decedent followed up in early January, 2013, with Kari A. Jones, a board-certified psychiatrist. In his deposition, a transcript of which was admitted into evidence, Jones testified that the decedent had reported that his anxiety and depression were worsening over the previous month, a change that the decedent attributed to his job as a police officer. Jones diagnosed the decedent at that time with panic disorder without agoraphobia. Although he did not definitively diagnose the decedent with depression, he did provisionally diagnose depression, indicating that "[there were] some symptoms that seem to be present but [the decedent did not] meet the full criteria for a definitive diagnosis

. . . ." Jones prescribed Effexor for the decedent's anxiety and depression, discontinued his prescription for Xanax, an antianxiety medication that had been prescribed by Kurker, and started him on clonazepam, also known as Klonopin, another antianxiety medication.[3] Jones noted that the decedent had a history of depression that dated back to his early adulthood. Jones testified that the medications he prescribed the decedent were for his panic disorder and depression, not for posttraumatic stress disorder.

On January 15, 2013, the decedent, who was working an overnight shift, responded to a fire (January, 2013 fire) at an apartment complex in East Hartford. The decedent later told the plaintiff that residents were jumping from windows and children were being thrown to safety. Todd Hanlon, a lieutenant with the department, encountered the decedent at the scene, describing him as "babbling." Hanlon decided to send the decedent, accompanied by another officer, to Hartford Hospital by ambulance. The emergency room records from Hartford Hospital noted that the decedent complained of feeling lightheaded and weak, and that he had recently been prescribed Metoprolol. Michael Morelli, a fellow officer, drove the decedent home from the hospital and the decedent told him he "wasn't doing well." Another officer, Nestor Caraballo, responded to the fire and spoke with the decedent, who told him that his doctor had increased his dosage of prescribed medications. A first report of injury relating to the January, 2013 fire noted that the decedent had been "[o]vercome by smoke . . . ."

After the January, 2013 fire, the decedent called Jones. The plaintiff testified that she encouraged the

---

[3] We note that, although the administrative law judge found that Jones prescribed Viibryd, Jones' uncontradicted testimony, which is consistent with Jones' contemporaneous medical records, was that he had discontinued the decedent's Viibryd prescription for depression and anxiety. Thus, this finding appears to reflect a scrivener's error.

decedent to contact Jones because the decedent was panicking and confided that he had suicidal thoughts. On January 30, 2013, the decedent saw Jones, and it was decided that the decedent would take some time off from work due to his panic disorder. Jones also referred the decedent to a therapist, whom he saw on one occasion. In February, 2013, the decedent spoke with Officer Morelli and told him that he was "having some issues . . . there were some things going on, with seeing doctors, and some medication issues." Jones recommended that he take some time off. By February 28, 2013, the decedent and Jones discussed his return to work. Jones testified that, at that point, he thought the decedent could potentially suffer from post-traumatic stress disorder "as a possible comorbidity" but that this diagnosis was neither confirmed nor excluded by him.

The decedent returned to work on March 4, 2013, and was assigned administrative duties. It is undisputed that, on March 12, 2013, the decedent died of a "self-inflicted gunshot wound which occurred at work, during office hours and with the use of his service revolver." Timothy McConville, another fellow officer, testified that he saw the decedent minutes before his death and stated that "[the decedent] just wasn't himself . . . I think some of it was the medicine."

The decedent left a suicide note in which he wrote: "I am so sorry but when the depression hit this time, I knew it was different." He explained that he had "struggled with depression most of my early life" and wanted his death to be a catalyst for others to get help. He added that he "can't relax anymore no matter where I am, I can't take this torture and torment anymore . . . ." In another handwritten note, the decedent wrote: "I wish I could tell people every time I think of work I get stressed out and anxious. . . . Something in my mind has not been right for a few years now."

In 2013, the plaintiff commenced this action for survivorship benefits. In November, 2013, the plaintiff filed a form 30D[4] with the commission listing the date of injury as March 12, 2013, and the description of the injury as a "[g]unshot wound." In December, 2015, the plaintiff filed another form 30D describing the injury as "PTSD" with the date of injury listed as January 15, 2013, and, in the description of the injury it was noted, "[r]esponse to [a]partment [f]ire."

Between 2020 and 2022, the administrative law judge held several formal hearings on the plaintiff's claim, hearing testimony from lay witnesses, including the plaintiff and officers from the department, as well as medical expert witnesses. Several exhibits were offered into evidence, including medical records of the decedent, deposition transcripts and the decedent's personnel file with the department.

Robin Grant-Hall, a clinical psychologist, testified as one of the plaintiff's expert witnesses. She noted the decedent's relevant family history, including a history of depression with his mother and alcohol use disorder with his father, as well as some abuse history. She reviewed the decedent's medical records and noted that they showed chronic depressive symptoms. On the basis of her review of the records, her training and experience, Grant-Hall opined that the decedent developed post-traumatic stress disorder from his career as a police officer, which was exacerbated by the January, 2013 fire and which directly caused the decedent to take his own life.

Kenneth Selig, a psychiatrist, also testified for the plaintiff. Selig based his expert opinions on the decedent's medical records, personnel records, deposition

---

[4] Form 30D is titled "Dependent's Notice of Claim (To Administrative Law Judge and to Employer)." See *Estate of Haburey* v. *Winchester*, 150 Conn. App. 699, 704–705, 92 A.3d 265, cert. denied, 312 Conn. 922, 94 A.3d 1201 (2014).

transcripts, and interviews with people who knew the decedent, including the plaintiff. He also diagnosed the decedent with post-traumatic stress disorder and opined that the decedent committed suicide because he was "emotionally overwhelmed" from his post-traumatic stress disorder, which Selig opined had developed as a result of working as a police officer for almost twenty-five years and, during that time, experiencing traumatic incidents. (Emphasis omitted.) Selig further opined that the decedent's smoke inhalation from the January, 2013 fire aggravated his post-traumatic stress disorder, which led to his suicide. Selig, however, conceded that he could not conclude that the decedent had sustained a physical injury during the January, 2013 fire.

Catherine Lewis, a forensic psychiatrist, testified for the defendant. Lewis reviewed the decedent's personnel file and medical records, as well as certain deposition testimony. Lewis testified as to the decedent's history of depression, noting that this had been an ongoing issue for him. Lewis opined that the decedent's symptoms were consistent with a major depressive episode and anxious distress in the weeks leading to his death. She further opined that a variety of variables exacerbated the decedent's depression, including chronic pain, various changes to his psychiatric medications, and a recent change to his shift schedule. In her report, which was entered into evidence as a full exhibit, she opined that she could not conclude that the decedent suffered from post-traumatic stress disorder. Rather, she believed that he suffered from "lifetime" episodes of major depression and anxiety that were not related to his work as a police officer. Lewis also testified that it was her opinion that the decedent had suffered from panic disorder in the past, which confers a risk of suicide. Lewis testified that the January, 2013 fire had coincided with recent changes to the decedent's psychiatric medications and that he was having side effects

from the medications at that time. She ultimately opined that the decedent's major depressive episode, combined with anxious distress, sleep disturbance, and the management of the decedent's medications, were substantial contributing factors in the decedent's suicide.

The parties submitted proposed findings and briefs after the formal hearings. The plaintiff argued before the administrative law judge that, "as of January 15, 2013, the decedent suffered from [post-traumatic stress disorder], which condition was aggravated by his responding to a complex fire on that date, at which time he inhaled smoke and was administered oxygen, taken from the scene via ambulance, and was diagnosed with smoke inhalation. The aggravation of this condition caused his death on March 12, 2013." The plaintiff's proposed findings of fact referred to both the form 30D that alleged that a "[g]unshot wound" was the decedent's injury and to the form 30D that referred to the decedent's post-traumatic stress disorder. The defendant argued before the administrative law judge, inter alia, that "[t]he threshold issue in this case is whether or not [the decedent] ha[d] actually sustained a post-traumatic stress disorder versus a long-term depression. If the court rules that he sustained a long-term depression . . . the claim is not compensable and should be dismissed."

On October 5, 2022, the administrative law judge issued a finding and dismissal. In so doing, the administrative law judge found that (1) Selig's opinion that the decedent suffered from post-traumatic stress disorder was credible but "the weight of the medical evidence does not support the contention that the [decedent's post-traumatic stress disorder] arose from, or was caused by, any physical injury that he sustained as a police officer," (2) the decedent's post-traumatic stress disorder was an occupational disease, (3) the opinion of Lewis that the decedent "did not suffer a physical

injury on January 15, 2013, that aggravated his underlying mental health condition which then caused him to take his own life" was credible and persuasive, (4) the decedent suffered a physical injury on January 15, 2013, and (5) Lewis' opinion that the decedent suffered from "major depressive disorder and that this, coupled with medication management issues and sleep disturbance, was the reason for his tragically taking his own life and that this was not caused by the decedent's employment," was credible and persuasive. The administrative law judge subsequently denied the plaintiff's motion to correct certain findings and orders.

Thereafter, the plaintiff filed a petition for review of the administrative law judge's finding and dismissal. On appeal to the board, the plaintiff argued that the administrative law judge erroneously relied on Lewis' opinions, which the plaintiff asserted were not credible because "[they were] based upon misstatement[s] of facts and manufactured facts not found in the record." She further argued that the administrative law judge made subordinate findings that were "either inconsistent with the evidence, or simply not in the record," and drew unreasonable inferences and reached conclusions contrary to the law. She claimed that the only reasonable conclusion that could be drawn from the facts was that the "injuries suffered by [the decedent] at the [January, 2013] fire were the proximate cause of his suicide . . . ." The defendant filed a brief before the board arguing that the administrative law judge made appropriate factual findings regarding each of the medical experts, and that his conclusion that the decedent's post-traumatic stress disorder did not cause his suicide was supported by evidence in the record.

On November 3, 2023, the board issued a memorandum of decision in which it reversed the administrative law judge's dismissal of the plaintiff's claim. The board concluded that the administrative law judge's decision

was clearly erroneous and that he misapplied the law to the underlying facts. The board determined that, contrary to the parties' arguments, the "question was whether the decedent's death on March 12, 2013, constituted a compensable *physical injury* such that the [plaintiff] would be entitled to survivor's benefits." (Emphasis added.) The board stated that there were "inherent contradictions" in the administrative law judge's decision because, although the administrative law judge found that the decedent suffered from posttraumatic stress disorder, he "disregarded" that diagnosis when considering the reason for the decedent's suicide. The board determined that it was "reasonable to find that [the] decedent's death, regardless of the fact that it was the result of a mental impairment, constituted a *physical injury* that occurred in the course of his employment." (Emphasis added.) As the November, 2013 form 30D alleged a physical injury, namely, a gunshot wound, the board reasoned that no analysis of § 31-275 (16) (B) was necessary. The board concluded that, "[o]nce it was established . . . that the decedent sustained a physical injury that stemmed from a self-inflicted gunshot wound at work that arose out of and [was] in the course of his employment, and that his employment was a significant contributing factor to his physical injury, it was unreasonable to conclude that this was not a compensable claim." This appeal followed. Additional facts will be set forth as necessary.

We first set forth the standard of review and legal principles applicable to workers' compensation appeals. "[T]he principles [governing] our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the [administrative law judge]. . . . [T]he review . . . of an appeal from the [administrative law judge] is not a de novo hearing of the facts. . . . [Rather, the] power and duty of determining the facts

rests on the [administrative law judge and] . . . [t]he [administrative law judge] is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . [When] the subordinate facts allow for diverse inferences, the [administrative law judge's] selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It matters not that the basic facts from which the [administrative law judge] draws this inference are undisputed rather than controverted. . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [administrative law judge] alone is charged with the duty of initially selecting the inference [that] seems most reasonable and [the administrative law judge's] choice, if otherwise sustainable, may not be disturbed by a reviewing court. . . . This court's review of [the board's] decisions . . . is similarly limited. . . . [W]e must interpret [the administrative law judge's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the [administrative law judge] makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it. . . .

"Furthermore, [i]t is well settled that, because the purpose of the . . . [act] . . . is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) [arose] in the course of the employment. . . .

"[I]n Connecticut traditional concepts of proximate cause constitute the rule for determining . . . causation [in workers' compensation cases]. . . . [T]he test of proximate cause is whether the [employer's] conduct

is a substantial factor in bringing about the [employee's] injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied [the employee's] injuries to the [employer's conduct]. . . .

"As [our Supreme Court] previously [has] indicated, [the] court has defined proximate cause as [a]n actual cause that is a substantial factor in the resulting harm . . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) *Orzech* v. *Giacco Oil Co.*, 208 Conn. App. 275, 281–83, 264 A.3d 608 (2021); see also, e.g., *Funaioli* v. *New London*, 61 Conn. App. 131, 136, 763 A.2d 22 (2000) ("a[n] [administrative law judge's] conclusion that a [decedent's] employment was not a substantial factor in causing the [decedent's injury] is conclusive, provided it is supported by competent evidence and is otherwise consistent with the law").

"To establish [causation], the plaintiff must prove that the injury (1) arose out of the employment, and (2) occurred in the course of the employment. . . . This two part test derives from § 31-275, which provides in relevant part: (1) Arising out of and in the course of his employment means an accidental injury happening to an employee or an occupational disease of an employee originating while the employee has been engaged in the line of the employee's duty in the business or affairs of the employer . . . .

"An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. . . . The . . . requirement [that the injury must arise out of the employment] relates to the origin and cause of the accident, [whereas] the . . . requirement [that the injury must occur in the course of employment] relates to the time, place and [circumstance] of the accident. . . . [W]hether a [decedent's] injuries resulted from an incident that occurred in the course of the employment [therefore presents] a separate and distinct question from whether [those] . . . injuries arose out of [the] employment." (Citations omitted; internal quotation marks omitted.) *Clements* v. *Aramark Corp.*, 339 Conn. 402, 411–12, 261 A.3d 665 (2021).

Section 31-275 (16) (A) provides in relevant part that " '[p]ersonal injury' " includes, "in addition to accidental injury that may be definitely located as to the time when and the place where the accident occurred, an injury to an employee that is causally connected with the employee's employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." General Statutes (Rev. to 2013) § 31-275 (16) (A). Section 31-275 (16) (B) further provides in relevant part that " '[p]ersonal injury' " shall not be construed to include "(ii) [a] mental or emotional impairment, unless such impairment . . . arises from a physical injury or occupational disease . . . ." General Statutes (Rev. to 2013) § 31-275 (16) (B).

I

On appeal to this court, the defendant claims that the board incorrectly substituted the administrative law judge's findings with its own factual findings and conclusions on the issue of causation. The plaintiff counters

that the board relied on existing law in correcting the erroneous legal conclusions drawn from the facts found by the administrative law judge. We agree with the defendant.[5]

In assessing a workers' compensation claim, "[i]t is the [administrative law judge's] duty to evaluate the weight of the medical evidence and the credibility of the witnesses . . . and the [administrative law judge's] conclusions cannot be reversed simply because the plaintiff's own evaluations of the findings causes him to reach a contrary conclusion. Unless the factual findings on which the [administrative law judge] bases his conclusion are clearly erroneous, or there is no evidence in the record to support the conclusion, the conclusion must stand. . . . [I]t is proper to consider medical evidence along with all other evidence to determine

---

[5] The defendant also argues that the board improperly redefined the issues of the case in violation of its due process rights. Our conclusion that the board improperly substituted its own judgment on the issue of causation for that of the administrative law judge is dispositive of this appeal and, therefore, we need not address this additional argument. For the same reason, we need not address the defendant's second claim, namely, that the board improperly included a "mental-physical" claim within the definition of personal injury under § 31-275 (16) (A) and (B).

We note that, in the present case, the board stated that the "focus of the parties, and, in turn, the [administrative law judge], regarding [post-traumatic stress disorder] versus major depression being the compensable injury was . . . a 'red herring.' " The board grounded this statement on the fact that the plaintiff filed a form 30D asserting a "[g]unshot wound" as the compensable injury and concluded that an analysis of § 31-275 (16) (B) was not necessary. Although the main issue presented to the administrative law judge was which of the decedent's mental conditions caused his suicide, we note that, from the commencement of this case, the plaintiff had filed two form 30D claims: one asserted a gunshot wound as the compensable injury, and the other asserted post-traumatic stress disorder, as aggravated by physical injuries from the January, 2013 fire. In response to the form 30D that claimed a gunshot wound as the compensable injury, the defendant filed a form 43 to dispute liability in which it asserted that the "[decedent's] death did not arise in or out of [the] course of employment as per . . . § 31-306." See, e.g., *Woodbury-Correa* v. *Reflexite Corp.*, 190 Conn. App. 623, 626 n.3, 212 A.3d 252 (2019).

whether an injury is related to the employment." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Brooks* v. *Electric Boat Corp.*, 133 Conn. App. 377, 383, 35 A.3d 404 (2012).

As stated previously in this opinion, the administrative law judge's findings outlined the decedent's history of mental health issues, including anxiety and depression. These findings noted Lewis' opinions that the decedent's symptoms were consistent with major depressive disorder and anxious distress in the weeks leading to his death, and that a major depressive episode is characterized by decreased concentration, diminished energy, and suicidal thoughts, all of which were documented in the present case. The administrative law judge also relied in its findings on Lewis' opinion that, in the days leading up to his death, the side effects of the decedent's medications were " 'torturing' " him. The administrative law judge found that the decedent suffered from "major depressive disorder and that this, coupled with medication management issues and sleep disturbance, was the reason for his tragically taking his own life and that this was not caused by [the decedent's] employment . . . ." In so doing, the administrative law judge expressly credited Lewis' testimony, which he found to be "credible and persuasive . . . ."

The board rejected the administrative law judge's findings, stating that, although the administrative law judge found that the decedent suffered from the occupational disease of post-traumatic stress disorder, "he disregarded that diagnosis when considering the reason for the decedent's suicide." The board further stated that it was "unreasonable and clearly erroneous [for the administrative law judge] to find that the decedent's work-related mental health issues were not a substantial contributing factor in his suicide." The board noted that "even [Lewis], whose opinions . . . were credited by the [administrative law judge] acknowledged that

the [decedent's] working conditions and the events of [the January, 2013 fire] were factors that contributed to the aggravation of his underlying mental health condition and that the decedent's major depressive episode and anxious distress 'absolutely' contributed to his suicide. The focus of the parties and, in turn, the [administrative law judge] regarding [post-traumatic stress disorder] versus major depression being the compensable injury was, therefore, a 'red herring.' "

For the reasons that follow, we conclude that the board improperly substituted its own factual findings on causation for those of the administrative law judge, which were not clearly erroneous and which found support in the record. It was not the role of the board to retry the issue of causation. "[O]n review of the [administrative law judge's] findings, the [board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the [administrative law judge], and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the [administrative law judge] when these depend [on] the weight of the evidence and the credibility of witnesses." (Internal quotation marks omitted.) *Arrico* v. *Board of Education*, 212 Conn. App. 1, 18, 274 A.3d 148 (2022).

Indeed, the board recognized that it "cannot retry the facts of the case and may only overturn the findings of the administrative law judge if they are without evidentiary support, contrary to the law, or based on unreasonable or impermissible factual inferences." In its analysis on the issue of causation, however, the board overturned the administrative law judge's factual findings. The board summarized the administrative law

judge's findings, including that (1) the decedent suffered from post-traumatic stress disorder, despite finding that this disorder did not arise from a physical injury, (2) the decedent's post-traumatic stress disorder was an occupational disease, and (3) Lewis' opinions were credible and persuasive that the decedent's underlying major depressive disorder, coupled with medication management issues and sleep disturbance stemming from recent shift changes, caused his suicide. The board then stated, in cursory fashion, that there were "inherent contradictions" in the administrative law judge's decision and concluded that the administrative law judge "disregarded [the decedent's post-traumatic stress disorder] when considering the reason for the decedent's suicide."

The board acknowledged that Lewis testified that the decedent's underlying depressive disorder caused his suicide. The board, however, did not point to any error or speculation in Lewis' opinions, or refer to any evidence on which she had relied that was shown to be unreliable. Instead, it improperly substituted its own finding that the decedent's post-traumatic stress disorder was a substantial factor in causing his death, stating that, "[g]iven the [administrative law] judge's and [Lewis'] opinions, we find that it is unreasonable and clearly erroneous to find that the decedent's work-related mental health issues were not a substantial contributing factor in his suicide." See, e.g., *Fair* v. *People's Savings Bank*, 207 Conn. 535, 546, 542 A.2d 1118 (1988) ("it was improper for the [board] to substitute its findings for the findings of the [administrative law judge]"); *Frantzen* v. *Davenport Electric*, 206 Conn. App. 359, 368, 261 A.3d 41 (concluding that, despite apparently understanding legal standard, board "improperly reversed the [administrative law judge's] ruling by substituting its own judgment for the conclusion of the [administrative law

judge]''), cert. denied, 339 Conn. 914, 262 A.3d 134 (2021); see also Regs., Conn. State Agencies § 31-301-8.

As previously stated, to prove that an injury is compensable, the plaintiff must demonstrate that the injury (1) arose out of the employment and (2) occurred in the course of the employment. See *Clements* v. *Aramark Corp.*, supra, 339 Conn. 411. In the present case, the board reasoned that "[i]t is undisputed that the decedent's injury occurred in the course of his employment since he was at work, during his assigned shift, at the time that he committed suicide using his service revolver."[6] Apart from stating its own finding that the decedent's suicide was caused by his post-traumatic stress disorder, however, the board did not fully analyze the evidence to determine whether the administrative law judge incorrectly concluded that the decedent's death was not proximately caused by his employment.

The board relied on this court's decision in *Chesler* v. *Derby*, 96 Conn. App. 207, 899 A.2d 624, cert. denied, 280 Conn. 909, 907 A.2d 88 (2006), to conclude that it was "reasonable to find that [the] decedent's death, regardless of the fact that it was the result of a mental impairment, constituted a physical injury that occurred in the course of his employment."[7] *Chesler*, however, is

---

[6] We note that the defendant argues that the "gunshot wound was not one inflicted within the course and scope of the [decedent's] employment." The defendant, however, has not offered any case law or analysis in support of that argument, which occupies only one paragraph of its brief. To the extent that the defendant intended to dispute the board's determination that the decedent's death occurred within the scope of his employment, we decline to address that argument because it is inadequately briefed. See, e.g., *Smith* v. *H. Pearce Real Estate Co.*, 232 Conn. App. 82, 90–91, 335 A.3d 81, cert. denied, 352 Conn. 906,      A.3d      (2025).

[7] The plaintiff argues that the board's reliance on *Chesler* was consistent with our Supreme Court's decision in *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 787 A.2d 541 (2002). In *Gartrell*, our Supreme Court concluded that the plaintiff was entitled to workers' compensation benefits when the plaintiff's "nonwork-related psychiatric condition . . . was aggravated by a work-related physical injury . . . ." (Footnote omitted; internal quotation marks omitted.) Id., 30–31. That case is also distinguishable because, in

distinguishable because, in that case, this court affirmed the board's conclusion that a physical injury "precipitated by *work-related* stress [was] a compensable injury" because § 31-275 (16) (B) (ii) and (iii) does not exclude physical injuries brought on by work-related mental or emotional stress. (Emphasis added.) *Chesler* v. *Derby*, supra, 211, 216. Thus, in *Chesler*, it was not disputed that the decedent's stress, which led to a physical injury, namely, a fatal cardiac event, was work-related. Id., 211. In the present case, by contrast, the parties presented voluminous evidence, including evidence from conflicting medical experts, over the course of formal hearings that spanned several days on the crucial issues of (1) whether the decedent had post-traumatic stress disorder related to his employment, and (2) if he did, whether his suicide was caused by his work-related post-traumatic stress disorder, or his underlying major depressive disorder. Although the board characterized it as a "red herring," the issue of which mental health condition and/or conditions proximately caused the decedent's suicide was properly the major focus of the formal hearings before the administrative law judge, regardless of whether the claimed "injury" was a gunshot wound or the aggravation of post-traumatic stress disorder that stemmed from physical injuries the decedent sustained during the January, 2013 fire.

The board also stated that the present case can be "easily . . . analogized" to two prior decisions of this court, *Dixon* v. *United Illuminating Co.*, 57 Conn. App. 51, 748 A.2d 300, cert. denied, 253 Conn. 908, 753 A.2d 940 (2000), and *Orzech* v. *Giacco Oil Co.*, supra, 208 Conn. App. 275. In *Dixon*, this court affirmed the

the present case, the administrative law judge specifically found that the decedent did not sustain a physical injury from the January, 2013 fire "that aggravated his underlying mental health condition . . . ."

board's decision, which affirmed the workers' compensation commissioner's *dismissal* of the plaintiff's claim for survivorship benefits, on the ground that the decedent's suicide "was the result of his alcoholism and depression, rather than his [work-related] injury." *Dixon* v. *United Illuminating Co.*, supra, 52, 64. In *Dixon*, like in the present case, the workers' compensation commissioner relied on expert testimony concerning the cause of the decedent's suicide, and this court held that it was "within the [workers' compensation] commissioner's discretion to credit all, part or none of the expert testimony presented at the hearing." Id., 59. Thus, rather than supporting the board's position, *Dixon* is consistent with our determination that the administrative law judge's reliance on Lewis' expert testimony was not clearly erroneous. With respect to *Orzech*, although this court stated that suicide may be a compensable injury, *Orzech* is distinguishable because, in that case, the decedent's suicide stemmed from his depression, which had developed after he had sustained compensable *physical* injuries. *Orzech* v. *Giacco Oil Co.*, supra, 300–303. In the present case, by contrast, the administrative law judge found that, although the decedent sustained physical injuries during the January, 2013 fire, those injuries did not "[aggravate] his underlying mental health condition which then caused him to take his own life." See part II of this opinion. Thus, unlike in *Orzech*, the administrative law judge in the present case found that there was not an unbroken chain of causation "linking the decedent's compensable injuries to his death." *Orzech* v. *Giacco Oil Co.*, supra, 286.

Moreover, on the basis of our review of the record, we conclude that there was sufficient evidence from which the administrative law judge reasonably could have determined that the decedent's death was caused by his underlying major depressive disorder, rather than

his work-related post-traumatic stress disorder.[8] The plaintiff concedes that the board did not discuss the propriety of the administrative law judge's reliance on Lewis' opinions, which it should have done in assessing whether his findings were clearly erroneous. Upon our review, we conclude that Lewis' opinions were not unreasonable or based on conjecture. Lewis relied on the decedent's medical records, certain testimony, and an interview that she conducted with the plaintiff in rendering her opinions. See, e.g., *Weaver* v. *McKnight*, 313 Conn. 393, 411, 97 A.2d 920 (2014) ("[a] nontreating physician may base [her] opinion on medical records, test results, laboratory reports, and [a] party's statements"). The administrative law judge found that Lewis had diagnosed the decedent with major depressive disorder with recurrent anxiety and distress and referred to her testimony in which she stated, based on a reasonable degree of medical probability, that these underlying issues and the management of his medications for those conditions were substantial contributing factors in the decedent's suicide. Thus, this case is distinguishable from *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 99 Conn. App. 336, 913 A.2d 483 (2007), aff'd, 294 Conn. 132, 982 A.2d 157 (2009), in which this court concluded, and our Supreme Court later affirmed, that a medical

---

[8] The plaintiff asserted four alternative grounds for affirmance, none of which formed a basis for the board's decision but were properly raised pursuant to Practice Book § 63-4. Specifically, the plaintiff claims that (1) mental impairments are physical injuries under the act, challenging our Supreme Court's decision in *Biasetti* v. *Stamford*, 250 Conn. 65, 79–80, 735 A.2d 321 (1999), and its interpretation of § 31-275 (16) (B) (ii), (2) post-traumatic stress disorder is an occupational disease that causes injury to the brain, (3) post-traumatic stress disorder caused the decedent to die by suicide, and (4) the physical injuries suffered by the decedent during the January, 2013 fire aggravated his preexisting condition and caused him to die by suicide. Our determination that the administrative law judge's finding that the decedent's post-traumatic stress disorder did not cause his suicide was not clearly erroneous is dispositive of the first three alternative grounds for affirmance. We address the plaintiff's fourth alternative ground for affirmance in part II of this opinion.

expert's testimony was improperly grounded in conjecture and speculation because the expert conceded that there was "no way to know the exact cause of the decedent's death." Id., 345–47. Although Grant-Hall, Selig, and Lewis all acknowledged that the issue of the decedent's state of mind was difficult to determine because the decedent had died, they all offered their opinions on causation with a reasonable degree of psychological and/or medical probability, respectively. Moreover, none of the evidence on which Lewis relied was discredited by the administrative law judge. Cf., e.g., *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 429–30, 28 A.3d 347 (2011) (workers' compensation commissioner improperly relied on expert's opinion when expert's report relied on plaintiff and another expert for fact that traumatic brain injury occurred, despite fact that workers' compensation commissioner had discredited both plaintiff and other expert).

The board readily stated that the administrative law judge "clearly had the right to choose to credit one physician over another and/or to accept portions of those opinions as worthy of greater credibility."[9] The

[9] We note that the plaintiff argues that Lewis' testimony should be discounted because she misquoted one of the decedent's suicide notes. Specifically, Lewis testified: "So, here he writes, I can't relax, I feel like I'm coming out of my skin." (Internal quotation marks omitted.) Lewis' reference to the suicide note was in the context of her testimony that the decedent's psychiatric medications had been "abruptly" changed by Jones, and that the decedent's symptoms, as described in the note, were consistent with such a change. The note in question, which was admitted into evidence, indicates in a handwritten portion that he "can't relax," but does not indicate that he felt like he was "coming out of [his] skin."

The board did not make any determination as to this alleged error, as the plaintiff concedes in her brief to this court. Although the administrative law judge repeated this misquoted portion of the note in its conclusions relating to Lewis, he *correctly* quoted from the note when he summarized it elsewhere in his findings. Moreover, even if Lewis' interpretation of the note, and the administrative law judge's finding that repeated that interpretation, was clearly erroneous, any error was not harmful in light of all the other evidence that Lewis relied on in rendering her opinions. See, e.g., *Circulent, Inc.* v.

board correctly noted that the administrative law judge did not choose to credit all of Lewis' opinions, as it credited Selig's opinion that the decedent did suffer from work-related post-traumatic stress disorder, rather than Lewis' opinion that he did not. See, e.g., *State* v. *LeRoya M.*, 340 Conn. 590, 615, 264 A.3d 983 (2021) ("[t]he [fact finder] is free to accept or reject each expert's opinion in whole or in part" (internal quotation marks omitted)). Contrary to the board's determination, however, it was not necessarily inconsistent for the administrative law judge to find that, although the decedent had post-traumatic stress disorder, that disorder did not cause the decedent's suicide. That finding was based on the administrative law judge's decision to credit Lewis' opinions on causation. The administrative law judge noted that Lewis had performed a "psychiatric autopsy," which is an evaluation of a deceased person using collateral sources to determine that person's state of mind.[10] The administrative law judge found, relying on Lewis' testimony, that, when a person has an episode of major depression, they are 50 percent more likely to have a second episode, and, after two episodes, they are 75 percent more likely to have a third episode. The administrative law judge noted Lewis' opinion that the decedent's depression had been an ongoing issue since his young adulthood.

---

*Hatch & Bailey Co.*, 217 Conn. App. 622, 630, 289 A.3d 609 (2023) ("[When] . . . some of the facts found [by the fact finder] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the [trier's fact-finding] process, a new hearing is required." (Internal quotation marks omitted.)). Further, Lewis testified correctly that the decedent wrote that he "can't relax anymore," and it has not been disputed that she was qualified to opine on the import of *that* statement on the issue of causation.

[10] Selig also referred to his evaluation as a "psychiatric autopsy." Lewis testified that a psychiatric autopsy is a tool typically used by fellowship trained forensic psychiatrists. The administrative law judge found that Lewis, unlike Selig, was a fellowship trained forensic psychiatrist.

Ultimately, Lewis opined that "the major depressive episode with anxious distress, sleep disturbance and the management of [the decedent's] medications were a substantial contributing factor in [the decedent's] death." The plaintiff offered contrary evidence by presenting her own experts, Selig and Grant-Hall, both of whom had opined that the decedent's work-related post-traumatic stress disorder caused his suicide. The administrative law judge, however, in the face of such conflicting expert testimony, found Lewis' opinions on causation to be credible and persuasive. In so doing, the administrative law judge specifically cited to Lewis' credentials as a board-certified forensic psychiatrist.[11] Once the experts' reports and testimony were admitted into evidence, the administrative law judge was "entitled to determine the weight to give that evidence." *Story* v. *Woodbury*, 159 Conn. App. 631, 647, 124 A.3d 907 (2015).

Moreover, "it is proper to consider medical evidence along with all other evidence to determine whether an injury is related to the employment." (Emphasis omitted; internal quotation marks omitted.) Id. In the present case, the record before the administrative law judge contained other evidence that supported Lewis' conclusions. As the plaintiff stated in her brief to this court, by the time of the January, 2013 fire, the "undisputed evidence [was] that [the decedent] was severely troubled" and had been diagnosed with depression and anxiety, as well as panic disorder. These diagnoses appear

---

[11] With respect to the credentials of the medical expert witnesses, the administrative law judge found that Grant-Hall holds a doctoral degree in clinical psychology, and that Selig is a psychiatrist. The administrative law judge found that neither Grant-Hall nor Selig was a board-certified forensic psychiatrist. The administrative law judge further noted that Grant-Hall acknowledged that she was unable to opine concerning the decedent's medications. The administrative law judge further noted that, although Grant-Hall described herself as an "acute long-term trauma specialist," that is not a subspecialty recognized by the American Psychological Association.

in the decedent's medical records from Jones, and the administrative law judge referred to those records in his findings. The administrative law judge also referred to Kurker's records, which document the decedent's preexisting history of anxiety and depression over many years.

To be sure, the administrative law judge noted that the decedent's medical records revealed his complaints to Jones that his job as a police officer caused him significant stress. Jones testified that he believed the decedent's work contributed to his symptoms of panic disorder, but he could not opine on the nature of the decedent's suicide. Moreover, the plaintiff testified at length before the administrative law judge regarding the traumas that the decedent had been exposed to as a police officer. This evidence is consistent with the administrative law judge's finding that the decedent suffered from work-related post-traumatic stress disorder. The decedent indicated in one suicide note that, every time he thinks about work, he becomes anxious; in another note, however, he revealed that he had struggled with depression for "most of [his] early life," and that, "when the depression hit this time I knew it was different." The administrative law judge was entitled to find that the weight of the evidence demonstrated that the decedent's underlying depression, rather than his post-traumatic stress disorder, caused his death.

Although we agree with the plaintiff that the act should be interpreted to effectuate its remedial purpose to promote compensability, the plaintiff still must meet the essential elements of her claim. As we have previously explained, "[t]he determination of whether an injury arose out of and in the course of employment is a question of fact for the [administrative law judge]. . . . The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard

to fault, by imposing a form of strict liability on the employer. . . . A[n] [administrative law judge] may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . The [act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citation omitted; internal quotation marks omitted.) *Kuehl* v. *Koskoff*, 182 Conn. App. 505, 524, 190 A.3d 82, cert. denied, 330 Conn. 919, 194 A.3d 289 (2018).

On the basis of the foregoing, we conclude that the board improperly substituted its judgment on causation for that of the administrative law judge.

II

We next address the plaintiff's claim that the board's decision may be affirmed on the alternative ground that the decedent suffered a physical injury during the January, 2013 fire that aggravated a preexisting mental health condition, which, in turn, caused him to die by suicide. See footnote 8 of this opinion. The defendant counters that the administrative law judge properly rejected the plaintiff's theory of proximate causation in the present case. We agree with the defendant.

In support of this alternative ground for affirmance, the plaintiff relies on *Biasetti* v. *Stamford*, 123 Conn. App. 372, 383 n.6, 1 A.3d 1231, cert. denied, 298 Conn. 929, 5 A.3d 489 (2010), in which this court stated that the "exacerbation of [a] preexisting disorder may qualify as a compensable mental impairment under the act, provided the exacerbation arose from a physical injury or occupational disease." In *Biasetti*, however, we declined to address the plaintiff's claim that the workers' compensation commissioner improperly failed to

conclude that his preexisting post-traumatic stress disorder was compensable because the workers' compensation commissioner did not make any findings regarding any alleged exacerbation of that preexisting condition. Id.

In the present case, the administrative law judge explicitly found that, although the decedent did suffer a physical injury on January 15, 2013, "the opinion of [Lewis] [was] credible and persuasive that [the decedent] did *not* suffer a physical injury on January 15, 2013, *that aggravated his underlying mental health condition* which then caused him to take his own life." (Emphasis added.) This finding was supported by competent evidence and was not clearly erroneous.

The administrative law judge relied on Lewis' testimony in finding that, on the night of the January, 2013 fire, the decedent was suffering from side effects of his antidepressant medication. Lewis relied on not only the decedent's medical records that showed the recent changes in his medications but also on Officer Caraballo's deposition testimony that he spoke to the decedent at the scene of the January, 2013 fire, and the decedent mentioned his doctor increasing his medications. Although the plaintiff argues that Lewis conceded that the decedent had suffered smoke inhalation during the January, 2013 fire, Lewis did not make a causal connection between the decedent's smoke inhalation and the aggravation of his prior mental impairments. Rather, Lewis testified: "[I]t's the medication side effects, standing there, feeling lousy and . . . in my opinion, it's *not* smoke inhalation or seeing people, it's feeling . . . physically awful, not being able to perform on your job at a fire when you have a major depression and [are] melting down." (Emphasis added.) Lewis' testimony regarding the side effects of the decedent's medications was consistent with her report, which the administrative law judge also relied on in finding that

"[a] variety of variables . . . exacerbated [the decedent's] depression including . . . chronic back pain and the initiation of the medication Metoprolol, which can worsen depressive/anxiety symptoms and the initiation of Effexor, which can exacerbate anxiety and the use of an opiate for pain."

The plaintiff has pointed to the contrary expert testimony from Selig and Grant-Hall that the January, 2013 fire, including the decedent's smoke inhalation, aggravated his mental health conditions and were substantial factors in his suicide. Specifically, she relies on Selig's testimony that the decedent experienced "direct harm" from smoke inhalation and that the fire was, essentially, the "straw that broke the camel's back" and was a substantial factor in his suicide. As previously stated, however, Lewis testified that the January, 2013 fire aggravated his underlying depression but that aggravation did not stem from the physical injury of smoke inhalation but, rather, from the decedent's "inability to perform because of medication side effects . . . ."

As previously stated, the administrative law judge was entitled to credit Lewis' opinions in making his findings, which were based on the evidence, and we are "compelled to defer to those findings." *Hart* v. *Federal Express Corp.*, 321 Conn. 1, 23, 135 A.3d 38 (2016); see also, e.g., *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 594, 986 A.2d 1023 (2010). A finding reached by an administrative law judge by "comparison and examination of conflicting professional opinion . . . can rarely be found erroneous." (Internal quotation marks omitted.) *Hart* v. *Federal Express Corp.*, supra, 28; see also, e.g., *Hummel* v. *Marten Transport, Ltd.*, 114 Conn. App. 822, 845–46, 970 A.2d 834 (concluding that evidence supported workers' compensation commissioner's findings relating to causation), cert. denied, 293 Conn. 907, 978 A.2d 1109 (2009).

In sum, the administrative law judge in the present case was faced with conflicting evidence on the question of causation. The administrative law judge comprehensively summarized the evidence presented, weighed that evidence, and made appropriate credibility determinations in making its factual findings on the essential issues in the case. The question of proximate causation "is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 373, 44 A.3d 827 (2012). Thus, even if, as in the present case, reasonable minds may disagree as to whether the plaintiff established proximate cause, we will not disturb the administrative law judge's finding even if we might have reached a different conclusion if we were the trier of fact. See, e.g., id., 392. It is not the role of the board or this court to disturb the administrative law judge's credibility determinations when those determinations are supported by evidence in the record. See *Orzech* v. *Giacco Oil Co.*, supra, 208 Conn. App. 281–82.

The decision of the Compensation Review Board is reversed and the case is remanded to the board with direction to affirm the decision of the administrative law judge.

In this opinion the other judges concurred.